Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI**

BRENDA J. ANDERSON,

and

SUSAN CHANDLER,

and

EDNA KEYS-CHAVIS,

and

ALTAGRACIA CORTES DE MARRON,

and

KELLY DAVIS,

and

YVONNE GARLOCK,

and

EDDIE DERRICK, Individually and on behalf
of
SHIRLEY MAE DERRICK, deceased,
and
ELIZABETH JARRETT,

and

CAROLINA JOHNSON,

and

KATHLEEN MORIGI,

and

BARBARA PALMER,

**COMPLAINT AND JURY DEMAND**

Case No. _____

Division _____

1

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and

DEANNA PLOTNER,

and

RHONDA SAWYER-DEAQUINO,

and

CAROL SILVER,

and

SARAH SMITH,

and

VIOLA SMITH,

and

LOLA TARR,

and

BELINDA TURNER,

and

CLARA WILLIAMS,

and

LINDA WINHELD,

and

BRIA CRAIGE, Individually and on behalf of
EUGENIA MORRIS, deceased,
and
MARSHA INIGUEZ,
and
HEIDI MEADE,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and

RAMA RAY MOORE,

and

CHARLES DIAL, Individually and on behalf of
BETTY JO DIAL, deceased,
and
OLGUITA BERNSTEIN,
and
MARTHA LAWRENCE,

and

JOAN MCEUEN,

and

THERESA HAYDEN,

and

PHYLLIS MCMAHAN,

and

VICKIE SUE HATMAKER,

and

TIMOTHY SWIFT, Individually and on behalf of
STAR SWIFT, deceased,
and
ROBERTA KEENE,
and
ANETTA LOCKETT,

and

KIMBERLIE COULSTON,

and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

DONNA JONES,

and

GLORIA SUE MARTIN,

and

SHIRLEY MAE CONTE,

and

GLORIA GRAHAM,

and

GLADIES WHEET,

and

DEBORAH SOULIOS,

and

MARILYN GUSTAFSON,

and

MARITZA RIVERO,

and

KATJE SPIER,

and

VALERIE ROBINSON,

and

BRENDA KAY LOGAN,

and

EMMA JEAN TODD,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and

SHERICA DAVIS,

and

SUSAN FONDREN,

and

DEMARIAS SOJKA,

and

LEON BAGLEY, Individually and on behalf of
DORIS BAGLEY, deceased,

and

LANIE LAMA,

and

CAROLYN BANKS,

and

NATASHA HELVESTON,

and

ELLA EDWARDS,

and

DEBORAH STEWART,

and

CYNTHIA MCDEAVITT,

and

ELIZABETH FRYMIRE,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and

JEAN MERCER,

and

MARGARET LANGLEY,

and

RHONDA CIUCHTA,

and

JOANN CAMPBELL,

and

SUSAN BORGER,

and

NORMA KRZYZOSIAK,

and

DEBRA HIGGINS,

and

BARBARA KEZER,

and

WANDA BARTON,

and

REBECCA ARREDONDO,

and

ROSEMARIE PACILLI,

and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

WANDA PARKER,

and

SUSAN HEFFERNAN,

and

VICKIE NELSON,

and

VELSA MALDONADO,

and

JONNIE SALMON,

and

LYNDA WEBER,

and

LINDA MARIE BOZIC,

and

MARGARET WILSON,

and

KRYSTAL WILLIAMS,

and

MARY VINSON,

and

JESSICA BUTLER,

and

DOUGLAS SCHULZ, Individually and
on behalf of MARY SHUMPERT, deceased,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and

MARIE TAYLOR, Individually and
on behalf of REJANE DUCROT, deceased,

and

MELVIN ANDERSON, Individually and
on behalf of FLORENTYNE ANDERSON,
deceased,

and

SYLIVA VICTORIA PENA,

and

NANCY FIOLA,

and

JOYCE TISCHNER,

and

BARBARA LEE KOROTKA,

and

DOLLY RENNER,

and

DONNA WHICKER,

and

SERAH STEWART,

and

DONNA DEVER,

and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

GERALDINE STEPHENS,

and

BARBARA JEAN STEWART,

Plaintiffs,

v.

JOHNSON & JOHNSON; JOHNSON &
JOHNSON CONSUMER COMPANIES,
INC.; IMERYS TALC AMERICA, INC.;
f/k/a LUZENAC AMERICA, INC., f/k/a
RIO TINTO MINERALS, INC.; and
PERSONAL CARE PRODUCTS
COUNCIL,

Defendants.

## PETITION

COME NOW Plaintiffs, by and through undersigned counsel, and for their causes of action against Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Companies, Inc. ("J&J Consumer"); Imerys Talc America, Inc., f/k/a Luzenac America, Inc., f/k/a Rio Tinto Minerals, Inc. ("Imerys Talc"); and Personal Care Products Council f/k/a Cosmetic, Toiletry, and Fragrance Association ("PCPC") (collectively referred to as "Defendants"), alleging the following upon information and belief (including investigation made by and through Plaintiffs' counsel), except those allegations that pertain to Plaintiffs, which are based on personal knowledge:

## INTRODUCTION

1.      Plaintiffs bring this action against Defendants pursuant to Rule 52.05(a) of the Missouri Rules of Civil Procedure as their claims arise out of the same series of transactions

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and occurrences, and their claims involve common questions of law and fact. All claims in this action are a direct and proximate result of Defendants' and their corporate predecessors' negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the PRODUCTS known as "Johnson & Johnson Baby Powder" and "Shower to Shower" (hereinafter "the PRODUCTS"). All Plaintiffs in this action seek recovery for damages as a result of developing ovarian cancer, which was directly and proximately caused by such wrongful conduct by Defendants, the unreasonably dangerous and defective nature of talcum powder. All of the claims in this action involve common legal and medical issues.

## PARTIES

2.      Plaintiff Brenda J. Anderson is a citizen of the City of Seabrook, State of New Hampshire. At all pertinent times, including from approximately 1958 to the present, Plaintiff Anderson purchased and applied talcum powder to her body while located in the State of New Hampshire. In or around August 2015, Plaintiff Brenda J. Anderson was diagnosed with ovarian cancer, which developed in the State of New Hampshire. Plaintiff Brenda J. Anderson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Brenda J. Anderson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Brenda J. Anderson has otherwise been damaged in a personal and pecuniary nature.

3.      Plaintiff Susan Chandler is a citizen of the City of Jacksonville, State of Florida. At all pertinent times, including from approximately 1955 to 2015, Plaintiff Susan Chandler

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

purchased and applied talcum powder to her body. In or around May 2007, Plaintiff Susan Chandler was diagnosed with ovarian cancer, which was diagnosed in the State of Connecticut. Plaintiff Susan Chandler developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Susan Chandler has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Susan Chandler has otherwise been damaged in a personal and pecuniary nature.

4.    Plaintiff Edna Keys-Chavis is a citizen of the City of Chester, State of Virginia. At all pertinent times, including from her childhood to approximately the summer of 2016, Plaintiff Edna Keys-Chavis purchased and applied talcum powder to her body while located in the State of Virginia. In or around May 2015, Plaintiff Edna Keys-Chavis was diagnosed with ovarian cancer, which developed in the State of Virginia. Plaintiff Edna Keys-Chavis developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Edna Keys-Chavis has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Edna Keys-Chavis has otherwise been damaged in a personal and pecuniary nature.

5.    Plaintiff Altagracia Cortes de Marron is a citizen of the City of Hesperia, State of

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

California. At all pertinent times, including from approximately 1965 to 2015, Plaintiff Altagracia Cortes de Marron purchased and applied talcum powder to her body while located in the State of California. In or around January 2016, Plaintiff Altagracia Cortes de Marron was diagnosed with ovarian cancer, which developed in the State of California. Plaintiff Altagracia Cortes de Marron developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Altagracia Cortes de Marron has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Altagracia Cortes de Marron has otherwise been damaged in a personal and pecuniary nature.

6.       Plaintiff Kelly Davis is a citizen of the City of Montgomery, State of Texas. At all pertinent times, including from approximately 1993 to September 2004, Plaintiff Kelly Davis purchased and applied talcum powder to her body. In or around September 2004, Plaintiff Kelly Davis was diagnosed with ovarian cancer in the State of Florida. Plaintiff Kelly Davis developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Kelly Davis has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Kelly Davis has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

7.     Plaintiff Yvonne Garlock is a citizen of the City of Clovis, State of California. At all pertinent times, including from approximately 1949 to 2012, Plaintiff Yvonne Garlock purchased and applied talcum powder to her body while located in the State of California. In or around October 2012, Plaintiff Yvonne Garlock was diagnosed with ovarian cancer, which developed in the State of California. Plaintiff Yvonne Garlock developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Yvonne Garlock has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Yvonne Garlock has otherwise been damaged in a personal and pecuniary nature.

8.     Plaintiff Eddie Derrick, is an adult whose principal place of residence is in the City of Madisonville, State of Tennessee, brings this action in his capacity as the personal representative of Shirley Mae Derrick. Plaintiff Eddie Derrick is pursuing this action due to the wrongfully caused premature death of Shirley Mae Derrick. At all pertinent times, including from approximately 1985 to 2015, Mrs. Derrick purchased and applied talcum powder to her body while located in the State of Tennessee. In or around September 2014, Mrs. Derrick was diagnosed with ovarian cancer, which developed in the State of Tennessee. Mrs. Derrick passed away on November 16, 2015 due to Stage III ovarian cancer. The premature death of Mrs. Derrick was the direct and proximate result of her application of talcum powder and ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Tenn. Code Ann. § § 20-5-101, et seq., Plaintiff Eddie Derrick seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, and other damages as allowed by law.

9.    Plaintiff Elizabeth Jarrett is a citizen of the City of Washington, State of North Carolina. At all pertinent times, including from approximately 1960 to November 2015, Plaintiff Elizabeth Jarrett purchased and applied talcum powder to her body while located in the State of North Carolina. Plaintiff Elizabeth Jarrett was diagnosed with ovarian cancer, which developed in the State of North Carolina. Plaintiff Elizabeth Jarrett developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Elizabeth Jarrett has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Elizabeth Jarrett has otherwise been damaged in a personal and pecuniary nature.

10.    Plaintiff Carolina Johnson is a citizen of the City of Culver City, State of California. At all pertinent times, including from approximately 1964 to April 2016, Plaintiff Carolina Johnson purchased and applied talcum powder to her body while located in the State of California. In or around October 2007, Plaintiff Carolina Johnson was diagnosed with ovarian cancer, which developed in the State of California. Plaintiff Carolina Johnson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Carolina Johnson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Carolina Johnson has otherwise been damaged in a personal and pecuniary nature.

11.    Plaintiff Kathleen Morigi is a citizen of the City of Federal Way, State of Washington. At all pertinent times, including from approximately the 1970s to 2014, Plaintiff Kathleen Morigi purchased and applied talcum powder to her body while located in the State of Washington. In or around August 2013, Plaintiff Kathleen Morigi was diagnosed with ovarian cancer, which developed in the State of Washington. Plaintiff Kathleen Morigi developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Kathleen Morigi has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Kathleen Morigi has otherwise been damaged in a personal and pecuniary nature.

12.    Plaintiff Barbara Palmer is a citizen of the City of Washington Court House, State of Ohio. At all pertinent times, including from approximately 1957 to August 2015, Plaintiff Barbara Palmer purchased and applied talcum powder to her body while located in the State of Ohio. In or around 2013, Plaintiff Barbara Palmer was diagnosed with ovarian cancer, which developed in the State of Ohio. Plaintiff Barbara Palmer developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and

defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Barbara Palmer has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Barbara Palmer has otherwise been damaged in a personal and pecuniary nature.

13.     Plaintiff Deanna Plotner is a citizen of the City of Hagerstown, State of Maryland. For nearly her entire life, Plaintiff Deanna Plotner purchased and applied talcum powder to her body while located in the State of Maryland. In or around November 2015, Plaintiff Deanna Plotner was diagnosed with ovarian cancer, which developed in the State of Maryland. Plaintiff Deanna Plotner developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Deanna Plotner has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Deanna Plotner has otherwise been damaged in a personal and pecuniary nature.

14.     Plaintiff Rhonda Sawyer-DeAquino is a citizen of the City of Gretna, State of Louisiana. At all pertinent times, including from approximately 1995 to July 2016, Plaintiff Rhonda Sawyer-DeAquino purchased and applied talcum powder to her body while located in the State of Louisiana. In or around July 2016, Plaintiff Rhonda Sawyer-DeAquino was diagnosed with ovarian cancer, which developed in the State of Louisiana. Plaintiff Rhonda

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

16

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Sawyer-DeAquino developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Rhonda Sawyer-DeAquino has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Rhonda Sawyer-DeAquino has otherwise been damaged in a personal and pecuniary nature.

15.     Plaintiff Carol Silver is a citizen of the City of Bayside, State of New York. At all pertinent times, including from approximately 1949 to 2009, Plaintiff Carol Silver purchased and applied talcum powder to her body while located in the State of New York. In or around September 2009, Plaintiff Carol Silver was diagnosed with ovarian cancer, which developed in the State of New York. Plaintiff Carol Silver developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Carol Silver has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Carol Silver has otherwise been damaged in a personal and pecuniary nature.

16.     Plaintiff Sarah Smith is a citizen of the City of Camden, State of Alabama. At all pertinent times, including from approximately 1990 to 2011, Plaintiff Sarah Smith purchased and applied talcum powder to her body while located in the State of Alabama. In or around August

2016, Plaintiff Sarah Smith was diagnosed with ovarian cancer, which developed in the State of Alabama. Plaintiff Sarah Smith developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Sarah Smith has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sarah Smith has otherwise been damaged in a personal and pecuniary nature.

17.    Plaintiff Viola Smith is a citizen of the City of Salisbury, State of Maryland. At all pertinent times, including from approximately 1990 to 2009, Plaintiff Viola Smith purchased and applied talcum powder to her body while located in the State of Maryland. In or around 2010 or 2011, Plaintiff Viola Smith was diagnosed with ovarian cancer, which developed in the State of Maryland. Plaintiff Viola Smith developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Viola Smith has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Viola Smith has otherwise been damaged in a personal and pecuniary nature.

18.    Plaintiff Lola Tarr is a citizen of the City of Seymour, State of Missouri. At all pertinent times, including from approximately 1965 to 1980, Plaintiff Lola Tarr purchased and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

applied talcum powder to her body while located in the State of Missouri. In or around July 2015, Plaintiff Lola Tarr was diagnosed with ovarian cancer, which developed in the State of Missouri. Plaintiff Lola Tarr developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Lola Tarr has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Lola Tarr has otherwise been damaged in a personal and pecuniary nature.

19.     Plaintiff Belinda Turner is a citizen of the City of Miramar Beach, State of Florida. At all pertinent times, including from approximately 1949 to 2016, Plaintiff Belinda Turner purchased and applied talcum powder to her body while located in the State of Florida. In or around 2011, Plaintiff Belinda Turner was diagnosed with ovarian cancer, which developed in the State of Florida. Plaintiff Belinda Turner developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Belinda Turner has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Belinda Turner has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

20.    Plaintiff Clara Williams is a citizen of the City of Perdue Hill, State of Alabama. Since the 1960s, Plaintiff Clara Williams purchased and applied talcum powder to her body while located in the State of Alabama. In or around 2008, Plaintiff Clara Williams was diagnosed with ovarian cancer, which developed in the State of Alabama. Plaintiff Clara Williams developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Clara Williams has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Clara Williams has otherwise been damaged in a personal and pecuniary nature.

21.    Plaintiff Linda Winheld is a citizen of the City of Elkins Park, State of Pennsylvania. At all pertinent times, including from approximately 1960 to 1990, Plaintiff Linda Winheld purchased and applied talcum powder to her body while located in the State of Pennsylvania. In or around June 2014, Plaintiff Linda Winheld was diagnosed with ovarian cancer, which developed in the State of Pennsylvania. Plaintiff Linda Winheld developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Linda Winheld has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Linda Winheld has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

22.     Plaintiff Bria Craige, is an adult whose principal place of residence is in the City of New Orleans, State of Louisiana, brings this action in her capacity as personal representative to Ms. Eugenia Morris. Plaintiff Bria Craige is pursuing this action due to the wrongfully caused premature death of her mother, Ms. Eugenia Morris. For her entire life, Ms. Morris purchased and applied talcum powder to her body while located in the State of Louisiana. In or around September 2014, Ms. Morris was diagnosed with ovarian cancer, which developed in the State of Louisiana. Ms. Morris passed away on December 5, 2015. The premature death of Ms. Morris was the direct and proximate result of her application of talcum powder and ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to La. Civ. Code Ann. Art. § 2315, et seq., Plaintiff Bria Craige seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, and other damages as allowed by law.

23.     Plaintiff Marsha Iniguez is a citizen of the City of Goodyear, State of Arizona. At all pertinent times, including from approximately the 1960s to 2016, Plaintiff Marsha Iniguez purchased and applied talcum powder to her body while located in the State of Arizona. In or around July 2016, Plaintiff Marsha Iniguez was diagnosed with ovarian cancer, which developed in the State of Arizona. Plaintiff Marsha Iniguez developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Marsha Iniguez

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Marsha Iniguez has otherwise been damaged in a personal and pecuniary nature.

24.     Plaintiff Heidi Meade is a citizen of the City of Amherstdale, State of West Virginia. At all pertinent times, including from approximately 1975 to 1999, Plaintiff Heidi Meade purchased and applied talcum powder to her body while located in the State of West Virginia. Plaintiff Heidi Meade was diagnosed with ovarian cancer on June 7, 2013 and then again on October 16, 2015, which developed in the State of West Virginia. Plaintiff Heidi Meade developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Heidi Meade has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Heidi Meade has otherwise been damaged in a personal and pecuniary nature.

25.     Plaintiff Rama Ray Moore is a citizen of the City of Houston, State of Texas. At all pertinent times, including from approximately 1959 to 2013, Plaintiff Rama Ray Moore purchased and applied talcum powder to her body while located in the State of Texas. In or around October 2013, Plaintiff Rama Ray Moore was diagnosed with ovarian cancer, which developed in the State of Texas. Plaintiff Rama Ray Moore developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Rama Ray Moore has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Rama Ray Moore has otherwise been damaged in a personal and pecuniary nature.

26.     Plaintiff Charles Dial, is an adult whose principal place of residence is in the City of Rogers, State of Arizona, brings this action in his capacity as personal representative to Ms. Betty Jo Dial. Plaintiff Charles Dial is pursuing this action due to the wrongfully caused premature death of his mother, Ms. Betty Jo Dial. For nearly her entire life, Ms. Dial purchased and applied talcum powder to her body while located in the State of Arizona. In or around 2010, Ms. Dial was diagnosed with ovarian cancer, which developed in the State of Arizona. Ms. Dial passed away on March 20, 2014 due to Stage IV ovarian cancer. The premature death of Mrs. Dial was the direct and proximate result of her application of talcum powder and ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Ariz. Rev. Stat. Ann. § § 12-611, et seq., Plaintiff Charles Dial seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, and other damages as allowed by law.

27.     Plaintiff Olguita Bernstein is a citizen of the City of Hollywood, State of Florida. At all pertinent times, including from approximately 1976 to 2016, Plaintiff Olguita Bernstein purchased and applied talcum powder to her body while located in the State of Florida. In or around June 2016, Plaintiff Olguita Bernstein was diagnosed with ovarian cancer, which developed in the State of Florida. Plaintiff Olguita Bernstein developed ovarian cancer, and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Olguita Bernstein has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Olguita Bernstein has otherwise been damaged in a personal and pecuniary nature.

28.    Plaintiff Martha Lawrence is a citizen of the City of Montgomery, State of Alabama. At all pertinent times, including from approximately 1967 to 2010, Plaintiff Martha Lawrence purchased and applied talcum powder to her body while located in the State of Alabama. In or around 2016, Plaintiff Martha Lawrence was diagnosed with ovarian cancer, which developed in the State of Alabama. Plaintiff Martha Lawrence developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Martha Lawrence has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Martha Lawrence has otherwise been damaged in a personal and pecuniary nature.

29.    Plaintiff Joan McEuen is a citizen of the City of Russellville, State of Kentucky. At all pertinent times, including from approximately her teenage years to 2015, Plaintiff Joan McEuen purchased and applied talcum powder to her body. In or around 2007, Plaintiff Joan McEuen was diagnosed with ovarian cancer, which was diagnosed in the State of Florida.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Plaintiff Joan McEuen developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Joan McEuen has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Joan McEuen has otherwise been damaged in a personal and pecuniary nature.

30.     Plaintiff Theresa Hayden is a citizen of the City of Arlington, State of Texas. At all pertinent times, including from approximately 1968 through the present, Plaintiff Theresa Hayden purchased and applied talcum powder to her body while located in the State of Texas. In or around 2005, Plaintiff Theresa Hayden was diagnosed with ovarian cancer, which developed in the State of Texas. Plaintiff Theresa Hayden developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Theresa Hayden has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Theresa Hayden has otherwise been damaged in a personal and pecuniary nature.

31.     Plaintiff Phyllis McMahan is a citizen of the City of Knoxville, State of Tennessee. At all pertinent times, including from approximately 1995 to December 2004, Plaintiff Phyllis McMahan purchased and applied talcum powder to her body while located in the

State of Tennessee. In or around December 2004, Plaintiff Phyllis McMahan was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Phyllis McMahan developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Phyllis McMahan has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Phyllis McMahan has otherwise been damaged in a personal and pecuniary nature.

32.    Plaintiff Vickie Sue Hatmaker is a citizen of the City of West Union, State of Ohio. At all pertinent times, including from approximately 1955 to August 2016, Plaintiff Vickie Sue Hatmaker purchased and applied talcum powder to her body while located in the State of Ohio. In or around May 2016, Plaintiff Vickie Sue Hatmaker was diagnosed with ovarian cancer, which developed in the State of Ohio. Plaintiff Hat Vickie Sue Hatmaker maker developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Vickie Sue Hatmaker has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Vickie Sue Hatmaker has otherwise been damaged in a personal and pecuniary nature.

33.    Plaintiff Timothy Swift, is an adult whose principal place of residence is in the City of Grand Marais, State of Michigan, brings this action in his capacity as personal

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

representative of Mrs. Star Swift. Plaintiff Timothy Swift is pursuing this action due to the wrongfully caused premature death of his wife, Mrs. Star Swift. At all pertinent times, including from approximately 1986 to 2014, Mrs. Swift purchased and applied talcum powder to her body. In or around June 2010, Mrs. Swift was diagnosed with ovarian cancer, which was diagnosed in the State of Wisconsin. Mrs. Swift passed away on March 14, 2014 due to a Metastatic Ovarian Adenocarcinoma. The premature death of Mrs. Swift was the direct and proximate result of her application of talcum powder and ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Mich. Comp. Laws § 600.2922, et seq., Plaintiff Timothy Swift seeks damages for decedent's loss of future earnings, loss of decedent's value to her estate, and other damages as allowed by law.

34.    Plaintiff Roberta Keene is a citizen of the City of Mayville, State of Tennessee. At all pertinent times, including from approximately 1968 to 2005, Plaintiff Roberta Keene purchased and applied talcum powder to her body. In or around June 2005, Plaintiff Roberta Keene was diagnosed with ovarian cancer, which was diagnosed in the State of Georgia. Plaintiff Roberta Keene developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Roberta Keene has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Roberta Keene has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

35.    Plaintiff Anetta Lockett is a citizen of the City of Anna, State of Texas. At all pertinent times, including from approximately 1978 to 2016, Plaintiff Anetta Lockett purchased and applied talcum powder to her body while located in the State of Texas. In or around February 2011, Plaintiff Anetta Lockett was diagnosed with ovarian cancer, which developed in the State of Texas. Plaintiff Anetta Lockett developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Anetta Lockett has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Anetta Lockett has otherwise been damaged in a personal and pecuniary nature.

36.    Plaintiff Kimberlie Coulston is a citizen of the City of Las Vegas, State of Nevada. At all pertinent times, including from approximately 1973 to 1986, Plaintiff Kimberlie Coulston purchased and applied talcum powder to her body while located in the State of Nevada. In or around July 2016, Plaintiff Kimberlie Coulston was diagnosed with ovarian cancer, which developed in the State of Nevada. Plaintiff Kimberlie Coulston developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Kimberlie Coulston has incurred and will incur medical expenses in the future, has endured and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

will endure pain and suffering and loss of enjoyment of life, and Plaintiff Kimberlie Coulston has otherwise been damaged in a personal and pecuniary nature.

37.     Plaintiff Donna Jones is a citizen of the City of Eddyville, State of Kentucky. At all pertinent times, including from approximately 1975 to 2013, Plaintiff Donna Jones purchased and applied talcum powder to her body while located in the State of Kentucky. In or around November 2015, Plaintiff Donna Jones was diagnosed with ovarian cancer, which developed in the State of Kentucky. Plaintiff Donna Jones developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Donna Jones has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Donna Jones has otherwise been damaged in a personal and pecuniary nature.

38.     Plaintiff Gloria Sue Martin is a citizen of the City of Bronson, State of Florida. At all pertinent times, including from her childhood to May 2016, Plaintiff Gloria Sue Martin purchased and applied talcum powder to her body while located in the State of Florida. In or around June 2016, Plaintiff Gloria Sue Martin was diagnosed with ovarian cancer, which developed in the State of Florida. Plaintiff Gloria Sue Martin developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Gloria

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Sue Martin has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Gloria Sue Martin has otherwise been damaged in a personal and pecuniary nature.

39.    Plaintiff Shirley Mae Conte is a citizen of the City of Monterey, State of California. At all pertinent times, including from approximately 1956 to 1996, Plaintiff Shirley Mae Conte purchased and applied talcum powder to her body while located in the State of California. In or around 2012, Plaintiff Shirley Mae Conte was diagnosed with ovarian cancer, which developed in the State of California. Plaintiff Shirley Mae Conte developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Shirley Mae Conte has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Shirley Mae Conte has otherwise been damaged in a personal and pecuniary nature.

40.    Plaintiff Gloria Graham is a citizen of the City of Jacksonville, State of Florida. At all pertinent times, including from approximately 1969 to 2012, Plaintiff Gloria Graham purchased and applied talcum powder to her body while located in the State of Florida. In or around May 2010, Plaintiff Gloria Graham was diagnosed with ovarian cancer, which developed in the State of Florida. Plaintiff Gloria Graham developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of

the talcum powder. As a direct and proximate result of these injuries, Plaintiff Gloria Graham has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Gloria Graham has otherwise been damaged in a personal and pecuniary nature.

41.    Plaintiff Gladies Wheet is a citizen of the City of Bordentown, State of New Jersey. For nearly her entire life, Plaintiff Gladies Wheet purchased and applied talcum powder to her body while located in the State of New Jersey. In or around July 2016, Plaintiff Gladies Wheet was diagnosed with ovarian cancer in the State of New York. Plaintiff Gladies Wheet developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Gladies Wheet has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Gladies Wheet has otherwise been damaged in a personal and pecuniary nature.

42.    Plaintiff Deborah Soulios is a citizen of the City of Floral Park, State of New York. At all pertinent times, including from approximately 1957 to 2015, Plaintiff Deborah Soulios purchased and applied talcum powder to her body while located in the State of New York. In or around March 2016, Plaintiff Deborah Soulios was diagnosed with ovarian cancer, which developed in the State of New York. Plaintiff Deborah Soulios developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Deborah Soulios has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Deborah Soulios has otherwise been damaged in a personal and pecuniary nature.

43.     Plaintiff Marilyn Gustafson is a citizen of the City of Rockford, State of Illinois. At all pertinent times, including from her childhood to approximately 2007, Plaintiff Marilyn Gustafson purchased and applied talcum powder to her body. In or around January 2006, Plaintiff Marilyn Gustafson was diagnosed with ovarian cancer in the State of Wisconsin. Plaintiff Marilyn Gustafson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Marilyn Gustafson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Marilyn Gustafson has otherwise been damaged in a personal and pecuniary nature.

44.     Plaintiff Maritza Rivero is a citizen of the City of Miami, State of Florida. At all pertinent times, including from approximately 1976 to the present, Plaintiff Maritza Rivero purchased and applied talcum powder to her body while located in the State of Florida. In or around March 2015, Plaintiff Maritza Rivero was diagnosed with ovarian cancer, which developed in the State of Florida. Plaintiff Maritza Rivero developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Maritza Rivero has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Maritza Rivero has otherwise been damaged in a personal and pecuniary nature.

45.    Plaintiff Katje Spier is a citizen of the City of Florham Park, State of New Jersey. At all pertinent times, including from approximately 1995 to the present, Plaintiff Katje Spier purchased and applied talcum powder to her body while located in the State of New Jersey. In or around March 2015, Plaintiff Katje Spier was diagnosed with ovarian cancer, which developed in the State of New Jersey. Plaintiff Katje Spier developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Katje Spier has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Katje Spier has otherwise been damaged in a personal and pecuniary nature.

46.    Plaintiff Valerie Robinson is a citizen of the City of St. Louis, State of Missouri. At all pertinent times, including from approximately 1960 to 2014, Plaintiff Valerie Robinson purchased and applied talcum powder to her body in the State of Missouri.  In or around 2014, Plaintiff Valerie Robinson was diagnosed with ovarian cancer, which developed in the State of Missouri. Plaintiff Valerie Robinson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Valerie Robinson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Valerie Robinson has otherwise been damaged in a personal and pecuniary nature.

47.    Plaintiff Brenda Kay Logan is a citizen of the City of Russellville, State of Kentucky.  At all pertinent times, including from approximately 2000 to 2015, Plaintiff Brenda Kay Logan purchased and applied talcum powder to her body in the State of Kentucky.  On or around October 7, 2010, Plaintiff Brenda Kay Logan was diagnosed with ovarian cancer, which developed in the State of Kentucky. Plaintiff Brenda Kay Logan developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Brenda Kay Logan has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Brenda Kay Logan has otherwise been damaged in a personal and pecuniary nature.

48.    Plaintiff Emma Jean Todd is a citizen of the City of West Paducah, State of Kentucky.  At all pertinent times, including from approximately 1964 to 2007, Plaintiff Emma Jean Todd purchased and applied talcum powder to her body in the State of Kentucky.  On or around May 1, 2007, Plaintiff Emma Jean Todd was diagnosed with ovarian cancer, which developed in the State of Kentucky. Plaintiff Emma Jean Todd developed ovarian cancer, and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Emma Jean Todd has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Emma Jean Todd has otherwise been damaged in a personal and pecuniary nature.

49.    Plaintiff Sherica Davis is a citizen of the City of Abbeville, State of Louisiana.  At all pertinent times, including from approximately 1989 to 2007, Plaintiff Sherica Davis purchased and applied talcum powder to her body in the State of Louisiana.  On or around August 10, 2007, Plaintiff Sherica Davis was diagnosed with ovarian cancer, which developed in the State of Louisiana. Plaintiff Sherica Davis developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Sherica Davis has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Sherica Davis has otherwise been damaged in a personal and pecuniary nature.

50.    Plaintiff Susan Fondren is a citizen of the City of Tallulah, State of Louisiana.  At all pertinent times, including from approximately 1990 to 2014, Plaintiff Susan Fondren purchased and applied talcum powder to her body in the State of Louisiana.  On or around December 2, 2014, Plaintiff Susan Fondren was diagnosed with ovarian cancer, which developed

in the State of Louisiana. Plaintiff Susan Fondren developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Susan Fondren has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Susan Fondren has otherwise been damaged in a personal and pecuniary nature.

51.    Plaintiff Demarias Sojka is a citizen of the City of Mandeville, State of Louisiana. At all pertinent times, including from approximately 1993 to present day, Plaintiff Demarias Sojka purchased and applied talcum powder to her body in the State of Louisiana.  In or around August 23, 2007, Plaintiff Demarias Sojka was diagnosed with ovarian cancer, which developed in the State of Louisiana. Plaintiff Demarias Sojka developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Demarias Sojka has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Demarias Sojka has otherwise been damaged in a personal and pecuniary nature. At all pertinent times, Plaintiff Demarias Sojka applied talcum powder in the State of Louisiana.

52.    Plaintiff Leon Bagley, an adult whose principal place of residence is in the City of Shreveport, State of Louisiana, brings this action in his capacity as the surviving spouse of Doris

36

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Bagley. Plaintiff Leon Bagley is pursuing this action due to the wrongfully caused premature death of Doris Bagley. At all pertinent times, including from approximately 1950 to 2016, Doris Bagley purchased and applied talcum powder to her body while located in the State of Louisiana. In or around November of 2015, Doris Bagley was diagnosed with ovarian cancer, which developed in the State of Louisiana. Doris Bagley passed away on September 19, 2016 due to an ovarian carcinoma. The untimely death of Doris Bagley was the direct and proximate result of her application of talcum powder and ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to La. C.C. arts. 2315.1 and 2315.2, Plaintiff seeks damages for all injuries sustained by Doris Bagley prior to her death, damages sustained by Plaintiff Leon Bagley as a result of Doris Bagley's death, and other damages as allowed by law.

53.     Plaintiff Lanie Lama is a citizen of the City of Covington, State of Louisiana.  At all pertinent times, including from approximately 1977 to 2001, Plaintiff Lanie Lama purchased and applied talcum powder to her body in the State of Louisiana.  In or around January 29, 2001, Plaintiff Lanie Lama was diagnosed with ovarian cancer, which developed in the State of Louisiana.   Plaintiff Lanie Lama developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Lanie Lama has incurred and will incur medical expenses in the future, has endured and will endure pain and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

suffering and loss of enjoyment of life, and Plaintiff Lanie Lama has otherwise been damaged in a personal and pecuniary nature.

54.     Plaintiff Carolyn Banks is a citizen of the City of Memphis, State of Tennessee. At all pertinent times, including from approximately 1974 to 2015, Plaintiff Carolyn Banks purchased and applied talcum powder to her body in the State of Tennessee.  In or around December 1, 2015, Plaintiff Carolyn Banks was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Carolyn Banks developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Carolyn Banks has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Carolyn Banks has otherwise been damaged in a personal and pecuniary nature.

55.     Plaintiff Natasha Helveston is a citizen of the City of Spring Hill, State of Tennessee.  At all pertinent times, including from approximately 1978 to 2015, Plaintiff Natasha Helveston purchased and applied talcum powder to her body in the State of Tennessee.  On or around March 8, 2012, Plaintiff Natasha Helveston was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Natasha Helveston developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Natasha Helveston has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Natasha Helveston has otherwise been damaged in a personal and pecuniary nature.

56.    Plaintiff Ella Edwards is a citizen of the City of Memphis, State of Tennessee. At all pertinent times, including from approximately 1968 to 1990, Plaintiff Ella Edwards purchased and applied talcum powder to her body in the State of Tennessee. On or around June 13, 2011, Plaintiff Ella Edwards was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Ella Edwards developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Ella Edwards has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Ella Edwards has otherwise been damaged in a personal and pecuniary nature.

57.    Plaintiff Deborah Stewart is a citizen of the City of Nashville, State of Tennessee. At all pertinent times, including from approximately 1974 to 1995, Plaintiff Deborah Stewart purchased and applied talcum powder to her body in the State of Tennessee. In or around 2003, Plaintiff Deborah Stewart was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Deborah Stewart developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

the talcum powder. As a direct and proximate result of these injuries, Plaintiff Deborah Stewart has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Deborah Stewart has otherwise been damaged in a personal and pecuniary nature.

58.    Plaintiff Cynthia McDeavitt is a citizen of the City of Knoxville, State of Tennessee.  At all pertinent times, including from approximately 1953 to 2016, Plaintiff Cynthia McDeavitt purchased and applied talcum powder to her body in the State of Tennessee.  On or around October 7, 2013, Plaintiff Cynthia McDeavitt was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Cynthia McDeavitt developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Cynthia McDeavitt has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Cynthia McDeavitt has otherwise been damaged in a personal and pecuniary nature.

59.    Plaintiff Elizabeth Frymire is a citizen of the City of Colt, State of Arkansas.  At all pertinent times, including from approximately 1990 to 2008, Plaintiff Elizabeth Frymire purchased and applied talcum powder to her body in the States of Tennessee, Arkansas, and Mississippi.  In or around 2003, Plaintiff Elizabeth Frymire was diagnosed with ovarian cancer, which developed in the State of Mississippi. Plaintiff Elizabeth Frymire developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful

and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Elizabeth Frymire has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Elizabeth Frymire has otherwise been damaged in a personal and pecuniary nature.

60.    Plaintiff Jean Mercer is a citizen of the City of Gladwin, State of Michigan.  At all pertinent times, including from approximately 1976 to 2002, Plaintiff Jean Mercer purchased and applied talcum powder to her body in the State of Michigan.  On or around March 25, 2014, Plaintiff Jean Mercer was diagnosed with ovarian cancer, which developed in the State of Michigan.   Plaintiff Jean Mercer developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Jean Mercer has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Jean Mercer has otherwise been damaged in a personal and pecuniary nature.

61.    Plaintiff Margaret Langley is a citizen of the City of North Chesterfield, State of Virginia.  At all pertinent times, including from approximately 1952 to 2015, Plaintiff Margaret Langley purchased and applied talcum powder to her body in the State of Virginia.  On or around March 24, 2015 Plaintiff Margaret Langley was diagnosed with ovarian cancer, which developed in the State of Virginia. Plaintiff Margaret Langley developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Margaret Langley has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Margaret Langley has otherwise been damaged in a personal and pecuniary nature.

62.     Plaintiff Rhonda Ciuchta is a citizen of the City of Redmond, State of Washington.  At all pertinent times, including from approximately 1975 to 2008, Plaintiff Rhonda Ciuchta purchased and applied talcum powder to her body in the State of Washington. On or around March 1, 2014, Plaintiff Rhonda Ciuchta was diagnosed with ovarian cancer, which developed in the State of Virginia. Plaintiff Rhonda Ciuchta developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Rhonda Ciuchta has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Rhonda Ciuchta has otherwise been damaged in a personal and pecuniary nature.

63.     Plaintiff Joann Campell is a citizen of the City of Holly Hill, State of South Carolina.  At all pertinent times, including from approximately 1954 to 2015, Plaintiff Joann Campbell purchased and applied talcum powder to her body in the State of South Carolina.  On or around April 2, 2015, Plaintiff Joann Campell was diagnosed with ovarian cancer, which developed in the State of South Carolina.   Plaintiff Joann Campbell developed ovarian cancer,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Joann Campbell has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Joann Campbell has otherwise been damaged in a personal and pecuniary nature.

64.    Plaintiff Susan Borger is a citizen of the City of Edison, State of New Jersey.  At all pertinent times, including from approximately 1977 to 2016, Plaintiff Susan Borger purchased and applied talcum powder to her body in the State of New Jersey.  On or around January 20, 2016, Plaintiff Susan Borger was diagnosed with ovarian cancer, which developed in the State of New Jersey. Plaintiff Susan Borger developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Susan Borger has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Susan Borger has otherwise been damaged in a personal and pecuniary nature.

65.    Plaintiff Norma Krzyzosiak is a citizen of the City of Airville, State of Pennsylvania. At all pertinent times, including from approximately 1964 to the present day, Plaintiff Norma Krzyzosiak purchased and applied talcum powder to her body in the State of Pennsylvania. On or around May 17, 2013, Plaintiff Norma Krzyzosiak was diagnosed with

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

ovarian cancer, which developed in the State of Pennsylvania. Plaintiff Norma Krzyzosiak developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Norma Krzyzosiak has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Norma Krzyzosiak has otherwise been damaged in a personal and pecuniary nature.

66.    Plaintiff Debra Higgins is a citizen of the City of Pensacola, State of Florida.  At all pertinent times, including from approximately 1953 to 2011, Plaintiff Debra Higgins purchased and applied talcum powder to her body in the State of Florida.  In or around 1983 and again in or around August of 2011, Plaintiff Debra Higgins was diagnosed with ovarian cancer, which developed in the State of Florida. Plaintiff Debra Higgins developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Debra Higgins has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Debra Higgins has otherwise been damaged in a personal and pecuniary nature.

67.    Plaintiff Barbara Kezer is a citizen of the City of Newburyport, State of Massachusetts.  At all pertinent times, including from approximately 1954 to 2015, Plaintiff Barbara Kezer purchased and applied talcum powder to her body in the State of Massachusetts.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

In or around 2007, Plaintiff Barbara Kezer was diagnosed with ovarian cancer, which developed in the State of Massachusetts. Plaintiff Barbara Kezer developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Barbara Kezer has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Barbara Kezer has otherwise been damaged in a personal and pecuniary nature.

68.     Plaintiff Wanda Barton is a citizen of the City of Marion, State of Ohio.  At all pertinent times, including from approximately 1980 to 2000, Plaintiff Wanda Barton purchased and applied talcum powder to her body in the State of Ohio.  On or around May 1, 2015, Plaintiff Wanda Barton was diagnosed with ovarian cancer, which developed in the State of Ohio. Plaintiff Wanda Barton developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Wanda Barton has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Wanda Barton has otherwise been damaged in a personal and pecuniary nature.

69.     Plaintiff Rebecca Arredondo is a citizen of the City of Harlingen, State of Texas. At all pertinent times, including from approximately 1994 to 2016, Plaintiff Rebecca Arredondo

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

purchased and applied talcum powder to her body in the State of Texas.  In or around November of 2000, Plaintiff Rebecca Arredondo was diagnosed with ovarian cancer, which developed in the State of Texas. Plaintiff Rebecca Arredondo developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Rebecca Arredondo has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Rebecca Arredondo has otherwise been damaged in a personal and pecuniary nature.

70.    Plaintiff Rosemarie Pacilli is a citizen of the City of Honesdale, State of Pennsylvania. At all pertinent times, including from approximately 1975 to 2011, Plaintiff Rosemarie Pacilli purchased and applied talcum powder to her body in the State of Pennsylvania. On or around July 1, 2012, Plaintiff Rosemarie Pacilli was diagnosed with ovarian cancer, which developed in the State of Pennsylvania. Plaintiff Rosemarie Pacilli developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Rosemarie Pacilli has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Rosemarie Pacilli has otherwise been damaged in a personal and pecuniary nature.

71.    Plaintiff Wanda Parker is a citizen of the City of Brentwood, State of Maryland.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

At all pertinent times, including from approximately 1989 to 2011, Plaintiff Wanda Parker purchased and applied talcum powder to her body in the State of Maryland.  On or around July 6, 2011, Plaintiff Wanda Parker was diagnosed with ovarian cancer, which developed in the State of Maryland. Plaintiff Wanda Parker developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Wanda Parker has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Wanda Parker has otherwise been damaged in a personal and pecuniary nature.

72.    Plaintiff Suzanne Heffernan is a citizen of the City of Malden, State of Massachusetts. At all pertinent times, including from approximately 1980 to 2012, Plaintiff Suzanne Heffernan purchased and applied talcum powder to her body in the State of Massachusetts.  In or around 2012, Plaintiff Suzanne Heffernan was diagnosed with ovarian cancer, which developed in the State of Massachusetts. Plaintiff Suzanne Heffernan developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Suzanne Heffernan has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Suzanne Heffernan has otherwise been damaged in a personal and pecuniary nature.

73.    Plaintiff Vickie Nelson is a citizen of the City of Sioux City, State of Iowa.  At all pertinent times, including from approximately 1995 to 2015, Plaintiff Vickie Nelson purchased and applied talcum powder to her body in the State of Iowa.   In early 2016, Plaintiff Vickie Nelson was diagnosed with ovarian cancer, which developed in the State of Iowa. Plaintiff Vickie Nelson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Vickie Nelson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Vickie Nelson has otherwise been damaged in a personal and pecuniary nature.

74.    Plaintiff Velsa Maldonado is a citizen of the City of Weslaco, State of Texas.  At all pertinent times, including from approximately 1954 to 2014, Plaintiff Velsa Maldonado purchased and applied talcum powder to her body in the State of Texas. On or around May 2014, Plaintiff Velsa Maldonado was diagnosed with ovarian cancer, which developed in the State of Texas.   Plaintiff Velsa Maldonado developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Velsa Maldonado has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Velsa Maldonado has otherwise been damaged in a personal and pecuniary nature.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

75.     Plaintiff Jonnie Salmon is a citizen of the City of Palestine, State of Texas.  At all pertinent times, including from approximately 1956 to 2016, Plaintiff Jonnie Salmon purchased and applied talcum powder to her body in the State of Texas. On or around December 2012, Plaintiff Jonnie Salmon was diagnosed with ovarian cancer, which developed in the State of Texas.   Plaintiff Jonnie Salmon developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Jonnie Salmon has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Jonnie Salmon has otherwise been damaged in a personal and pecuniary nature.

76.     Plaintiff Lynda Weber is a citizen of the City of Forney, State of Texas.  At all pertinent times, including from approximately 1960 to 2016, Plaintiff Lynda Weber purchased and applied talcum powder to her body in the State of Texas.  In or around June of 2011 and again in or around August of 2016, Plaintiff Lynda Weber was diagnosed with ovarian cancer, which developed in the State of Texas. Plaintiff Lynda Weber developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Lynda Weber has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Lynda Weber has otherwise been

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

damaged in a personal and pecuniary nature.

77.    Plaintiff Linda Marie Bozic is a citizen of the City of Elkins, State of West Virginia.  At all pertinent times, including from approximately 1973 to 1986, Plaintiff Linda Marie Bozic purchased and applied talcum powder to her body in the State of West Virginia.  In or around May of 2016, Plaintiff Linda Marie Bozic was diagnosed with ovarian cancer, which developed in the State of West Virginia. Plaintiff Linda Marie Bozic developed ovarian cancer, and suffered effects attendant Wthereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Linda Marie Bozic has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Linda Marie Bozic has otherwise been damaged in a personal and pecuniary nature.

78.    Plaintiff Margaret Wilson is a citizen of the City of Louisville, State of Kentucky. At all pertinent times, including her entire adult life, Plaintiff Margaret Wilson purchased and applied talcum powder to her body in the State of Kentucky.  In 2004, Plaintiff Margaret Wilson was diagnosed with ovarian cancer, which developed in the State of Kentucky. Plaintiff Margaret Wilson developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Margaret Wilson has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

life, and Plaintiff Margaret Wilson has otherwise been damaged in a personal and pecuniary nature.

79.    Plaintiff Krystal Williams is a citizen of the City of Memphis, State of Tennessee. At all pertinent times, including from approximately 1987 to 2001, Plaintiff Krystal Williams applied talcum powder to her body in the State of Tennessee.  In or around 2003, Plaintiff Krystal Williams was diagnosed with ovarian cancer, which developed in the State of Tennessee. Plaintiff Krystal Williams developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Krystal Williams has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Krystal Williams has otherwise been damaged in a personal and pecuniary nature.

80.    Plaintiff Mary Vinson is a citizen of the City of Covington, State of Kentucky.  At all pertinent times, from approximately 1956 to 2016, Plaintiff Mary Vinson purchased and applied talcum powder to her body in the State of Kentucky.  In 2014, Plaintiff Mary Vinson was diagnosed with fallopian cancer, which developed in the State of Kentucky. Plaintiff Mary Vinson developed fallopian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Mary Vinson has incurred and will incur medical

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Mary Vinson has otherwise been damaged in a personal and pecuniary nature.

81.    Plaintiff Jessica Butler is a citizen of the City of Emmett, State of Idaho.  At all pertinent times, including from approximately 1981 to 2015, Plaintiff Jessica Butler purchased and applied talcum powder to her body in the State of Idaho.  In or around December of 2014, Plaintiff Jessica Butler was diagnosed with ovarian cancer, which developed in the State of Idaho. Plaintiff Jessica Butler developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Jessica Butler has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Jessica Butler has otherwise been damaged in a personal and pecuniary nature.

82.    Plaintiff Douglas Schulz, an adult whose principal place of residence is in the City of Saltillo, State of Mississippi, brings this action in his capacity as the surviving son of Mary Shumpert. Plaintiff Douglas Schulz is pursuing this action due to the wrongfully caused premature death of Mary Shumpert. At all pertinent times, including from approximately 1990 to 2013, Mary Shumpert purchased and applied talcum powder to her body while located in the State of Mississippi. In or around 2011, Mary Shumpert was diagnosed with ovarian cancer, which developed in the State of Mississippi. Mary Shumpert passed away on March 16, 2013 due to an ovarian carcinoma. The untimely death of Mary Shumpert was the direct and proximate result of her application of talcum powder and ovarian cancer diagnosis. As a direct

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Miss. Code Ann. § 11-7-13, Plaintiff seeks damages for all injuries sustained by Mary Shumpert prior to her death, damages sustained by Plaintiff Douglas Schulz as a result of Mary Shumpert's death, and other damages as allowed by law.

83.    Plaintiff Marie Taylor, an adult whose principal place of residence is in the City of Washington, State of North Carolina, brings this action in her capacity as the surviving daughter and personal representative of Rejane Ducrot. Plaintiff Marie Taylor is pursuing this action due to the wrongfully caused premature death of Rejane Ducrot. At all pertinent times, including from approximately 1965 to 2013, Rejane Ducrot purchased and applied talcum powder to her body while located in the State of North Carolina. In or around 2009, Rejane Ducrot was diagnosed with ovarian cancer, which developed in the State of North Carolina. Rejane Ducrot passed away on August 16, 2013 due to ovarian cancer. The untimely death of Rejane Ducrot was the direct and proximate result of her application of talcum powder and ovarian cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to N.C. Gen. Stat. § 28A-18-1 and § 28A-18-2. Plaintiff seeks damages for all injuries sustained by Rejane Ducrot prior to her death, damages sustained by Plaintiff Marie Taylor as a result of Rejane Ducrot's death, and other damages as allowed by law.

84.    Plaintiff Melvin Anderson, an adult whose principal place of residence is in the City of Enfield, State of Connecticut, brings this action in his capacity as the surviving spouse

and executor of the estate of Florentyne Anderson. Plaintiff Melvin Anderson is pursuing this action due to the wrongfully caused premature death of Florentyne Anderson. At all pertinent times, including from approximately 1959 to 2014, Florentyne Anderson purchased and applied talcum powder to her body while located in the State of Connecticut. In or around 2010, Florentyne Anderson was diagnosed with fallopian tube cancer, which developed in the State of Connecticut. Florentyne Anderson passed away on March 25, 2014 due to fallopian tube cancer. The untimely death of Florentyne Anderson was the direct and proximate result of her application of talcum powder and fallopian tube cancer diagnosis. As a direct and proximate result of the unreasonably dangerous and defective nature of talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder, and pursuant to Conn. Gen. Stat. § 52-555 and § 52-599. Plaintiff seeks damages for all injuries sustained by Florentyne Anderson prior to her death, damages sustained by Plaintiff Melvin Anderson as a result of Florentyne Anderson's death, and other damages as allowed by law.

85.    Plaintiff Silvia Victoria Pena is a citizen of the City of McArthur, State of California.  At all pertinent times, including from approximately 1986 to 2015, Plaintiff Silvia Victoria Pena purchased and applied talcum powder to her body in the State of California.  In or around July of 2015, Plaintiff Silvia Victoria Pena was diagnosed with ovarian cancer, which developed in the State of California. Plaintiff Silvia Victoria Pena developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Silvia

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Victoria Pena has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Silvia Victoria Pena has otherwise been damaged in a personal and pecuniary nature.

86.    Plaintiff Nancy Fiola is a citizen of the City of Fall River, State of Massachusetts. At all pertinent times, including from approximately 1953 to 2015, Plaintiff Nancy Fiola purchased and applied talcum powder to her body in the State of Massachusetts.  In or around 2013, Plaintiff Nancy Fiola was diagnosed with ovarian cancer, which developed in the State of Massachusetts.   Plaintiff Nancy Fiola developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Nancy Fiola has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Nancy Fiola has otherwise been damaged in a personal and pecuniary nature.

87.    Plaintiff Joyce Tischner is a citizen of the City of Williamstown, State of New Jersey.  At all pertinent times, including from approximately 1961 to 2009, Plaintiff Joyce Tischner purchased and applied talcum powder to her body in the State of New Jersey.  In or around 2009, Plaintiff Joyce Tischner was diagnosed with ovarian cancer, which developed in the State of New Jersey.   Plaintiff Joyce Tischner developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of

the talcum powder. As a direct and proximate result of these injuries, Plaintiff Joyce Tischner has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Joyce Tischner has otherwise been damaged in a personal and pecuniary nature.

88.    Plaintiff Barbara Lee Korotka is a citizen of the City of Waupaca, State of Wisconsin.  At all pertinent times, including from approximately 1950 to 2015, Plaintiff Barbara Lee Korotka purchased and applied talcum powder to her body in the State of Wisconsin.  In or around 2011, Plaintiff Barbara Lee Korotka was diagnosed with ovarian cancer, which developed in the State of Wisconsin. Plaintiff Barbara Lee Korotka developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Barbara Lee Korotka has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Barbara Lee Korotka has otherwise been damaged in a personal and pecuniary nature.

89.    Plaintiff Dolly Renner is a citizen of the City of Arcata, State of California.  At all pertinent times, including from approximately 1976 to 2016, Plaintiff Dolly Renner purchased and applied talcum powder to her body in the State of California.  In or around 2015, Plaintiff Dolly Renner was diagnosed with ovarian cancer, which developed in the State of California. Plaintiff Dolly Renner developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Dolly Renner has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Dolly Renner has otherwise been damaged in a personal and pecuniary nature.

90.    Plaintiff Donna Whicker is a citizen of the City of Raleigh, State of North Carolina.  At all pertinent times, including from approximately 1975 to 2015, Plaintiff Donna Whicker purchased and applied talcum powder to her body in the State of North Carolina.  In or around October of 2015, Plaintiff Donna Whicker was diagnosed with ovarian cancer, which developed in the State of North Carolina. Plaintiff Donna Whicker developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Donna Whicker has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Donna Whicker has otherwise been damaged in a personal and pecuniary nature.

91.    Plaintiff Serah Stewart is a citizen of the City of Topeka, State of Kansas.  At all pertinent times, including from approximately 1965 to present day, Plaintiff Serah Stewart purchased and applied talcum powder to her body in the State of Kansas.  In or around February of 2010, Plaintiff Serah Stewart was diagnosed with ovarian cancer, which developed in the State of Kansas. Plaintiff Serah Stewart developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Serah Stewart has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Serah Stewart has otherwise been damaged in a personal and pecuniary nature.

92.    Plaintiff Donna Dever is a citizen of the City of Shepherdsville, State of Kentucky.  At all pertinent times, including from approximately 1973 to 2014, Plaintiff Valerie Robinson purchased and applied talcum powder to her body in the State of Kentucky.   In or around 2014, Plaintiff Donna Dever was diagnosed with ovarian cancer, which developed in the State of Kentucky. Plaintiff Donna Dever developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Donna Dever has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Donna Dever has otherwise been damaged in a personal and pecuniary nature.

93.    Plaintiff Geraldine Stephens is a citizen of the City of Somerset, State of Kentucky.  At all pertinent times, including from approximately the 1970s to 2000, Plaintiff Geraldine Stephens purchased and applied talcum powder to her body while located in the State of Kentucky.  On or around September 21, 2006, Plaintiff Geraldine Stephens was diagnosed with ovarian cancer, which developed in the State of Kentucky.   Plaintiff Geraldine Stephens

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

developed ovarian cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Geraldine Stephens has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Geraldine Stephens has otherwise been damaged in a personal and pecuniary nature.

94.    Plaintiff Barbara Jean Stewart is a citizen of the City of Madisonville, State of Kentucky.  At all pertinent times, including from approximately 2008 to 2013, Plaintiff Barbara Jean Stewart purchased and applied talcum powder to her body in the State of Kentucky.  In or around September of 2013, Plaintiff Barbara Jean Stewart was diagnosed with fallopian tube cancer, which developed in the State of Kentucky. Plaintiff Barbara Jean Stewart developed fallopian tube cancer, and suffered effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the talcum powder and Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of the talcum powder. As a direct and proximate result of these injuries, Plaintiff Barbara Jean Stewart has incurred and will incur medical expenses in the future, has endured and will endure pain and suffering and loss of enjoyment of life, and Plaintiff Barbara Jean Stewart has otherwise been damaged in a personal and pecuniary nature.

95.    Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. J&J may be served with process by serving its registered agent at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

96.    At all pertinent times, upon information and belief, Johnson & Johnson was engaged in the business of manufacturing, formulating, marketing, testing, promoting, selling, and distributing the PRODUCTS. At all pertinent times, Johnson & Johnson regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri.

97.    Defendant Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principal place of business in the State of New Jersey. Johnson & Johnson Consumer Inc. may be served with process by serving its registered agent located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

98.    At all pertinent times, upon information and belief, Johnson & Johnson Consumer, Inc. was engaged in the business of manufacturing, formulating, marketing, testing, promoting, selling, and distributing the PRODUCTS. At all pertinent times, Johnson & Johnson Consumer, Inc. regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri.

99.    Defendant Johnson & Johnson Consumer Inc. is and has been at all pertinent times a wholly-owned subsidiary of Defendant Johnson & Johnson, under the complete dominion of and control of Defendant Johnson & Johnson. Hereinafter, unless otherwise delineated, these two entities together shall be referred to as "Defendants Johnson & Johnson."

100.    Defendant Johnson & Johnson formulated, manufactured, marketed, tested, promoted, sold and distributed the PRODUCTS prior to Johnson & Johnson Consumer Companies, Inc. f/k/a Johnson & Johnson Consumer Companies, Inc. coming into existence.

101.    Defendant Johnson & Johnson formulates and coordinates the global strategy for the "Johnson & Johnson Family of Companies," including Johnson & Johnson Consumer

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Companies, Inc., and maintains central corporate policies requiring Johnson & Johnson Consumer Companies, Inc., to act under the general guidance of Johnson & Johnson.

102.    Johnson & Johnson exercised an unusually high degree of control over Johnson & Johnson Consumer Companies, Inc., particularly with the manufacturing, marketing, testing, promoting, selling, and/or distributing of the PRODUCTS.

103.    Johnson & Johnson maintains a reporting relationship with Johnson & Johnson Consumer Companies, Inc., that is not defined by a legal, corporate relationship, but in fact crosses that corporate line.

104.    Johnson & Johnson hereto directed Johnson & Johnson Consumer Companies, Inc., how it was to handle product safety communication between Johnson & Johnson Consumer Companies, Inc., and the scientific community and consumers at large as to the hazard the PRODUCTS pose to women with respect to development of ovarian cancer.

105.    Johnson & Johnson also maintains a central global finance function that governs the entire Johnson & Johnson Family of Companies, to include Defendant Johnson & Johnson Consumer Companies, Inc., such that Johnson & Johnson Consumer Companies, Inc. does not function independently but under Johnson & Johnson's umbrella.

106.    Defendant Imerys Talc America, Inc., f/k/a Luzenac Americas, Inc., f/k/a Rio Tinto Minerals, Inc. ("Imerys Talc"), is a Delaware corporation with its principal place of business in the State of California, located at 1732 North First Street, Suite 450, San Jose, California 95112. At all pertinent times, Imerys Talc has maintained a registered agent in the State of Delaware. Imerys Talc may be served with process of this Court via service on its registered agent, Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

107.    At all pertinent times, upon information and belief, Imerys Talc has been in the business of mining and distributing talcum powder for use in talcum powder-based products, including the PRODUCTS. Imerys Talc is the successor or continuation of Luzenac America, Inc. and Rio Tinto Minerals, Inc. Imerys Talc is legally responsible for the conduct of Luzenac America, Inc. and Rio Tinto Minerals, Inc.

108.    Defendant Personal Care Products Council ("PCPC") f/k/a Cosmetic, Toiletry, and Fragrance Association ("CTFA"), is a corporation organized under the laws of the District of Columbia, with its principal place of business in the District of Columbia.

109.    PCPC is the successor or continuation of CTFA and PCPC is legally responsible for all liabilities incurred when it was known as CTFA.

110.    At all pertinent times, upon information and belief, PCPC was a national trade association representing the personal care and cosmetics industry.

111.    At all pertinent times, upon information and belief, Defendants Imerys Talc and Johnson & Johnson have been active members of the PCPC. PCPC may be served with process of this Court via service on its registered agent, Thomas Meyers, at 1620 L Street, N.W., Suite 1200, Washington, District of Columbia 20036. PCPC is the successor or continuation of CTFA, and PCPC is legally responsible for CTFA's conduct.

112.    At all pertinent times, upon information and belief, all Defendants were engaged in the research, development, manufacture, design, testing, sale and marketing of the PRODUCTS, and introduced such PRODUCTS into interstate commerce with knowledge and intent that such PRODUCTS would be sold in the States of New Hampshire, Alabama, Arizona, Arkansas, California, Connecticut, Florida, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nevada, New Jersey, New York,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia, and Wisconsin.

## VENUE

113.    Venue is proper in this Court because Plaintiff Valerie Robinson was first exposed in the City of St. Louis, State of Missouri, as this is where, at all pertinent times, she purchased, ingested, and was exposed to the PRODUCTS at issue.

## FACTS COMMON TO ALL COUNTS

**A.    Overview of Talc**

114.    Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral.

115.    Talc is the main substance in talcum powders. Defendants Johnson & Johnson manufactured the PRODUCTS and the PRODUCTS are composed almost entirely of talc.

116.    At all pertinent times, a feasible alternative to the PRODUCTS has existed. For example, cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects. Cornstarch powders have been sold and marketed for the same uses as the PRODUCTS with nearly the same effectiveness.

117.    At all pertinent times, Defendant Imerys Talc[1] mined, refined, screened, tested and delivered the raw talc contained in the PRODUCTS.

118.    At all pertinent times, Imerys Talc continually advertised and marketed talc as safe for human use.

119.    Beginning in 2006 and until the present, Imerys Talc supplied its customers, including Defendants Johnson & Johnson, with Material Safety Data Sheets ("MSDS") for talc,

---

[1] All allegations regarding actions taken by Imerys Talc also include actions taken while that entity was known as Luzenac America, Inc.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

which were supposed to convey adequate health and warning information to its customers.

120.    At all pertinent times, Defendants Johnson & Johnson advertised and marketed its "Johnson's Baby Powder" as a symbol of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness" to help keep skin feeling dry and comfortable, and "clinically proven gentle and mild." Defendants Johnson & Johnson induced women through advertisements to dust themselves with this product to mask odors. The "Johnson's Baby Powder" bottle specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

121.    At all pertinent times, Defendants Johnson & Johnson advertised and marketed its "SHOWER to SHOWER" product as safe for use by women as evidenced in its slogan, "A sprinkle a day keeps odor away," and through advertisements such as "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day," and "SHOWER to SHOWER can be used all over your body." The website included the suggested use of the product "SHOWER to SHOWER" in the genital area with the following:  "Soothe your skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

122.    Although the labels have changed over time, the core message has been the same: that the PRODUCTS are safe for use by women, including for feminine hygiene.

123.    The Plaintiffs used the PRODUCTS to dust their perineum for feminine hygiene purposes. This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

**B.    Strong Clinical Evidence Links Talc Use to Ovarian Cancer**

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

124.    In or about 1971, the first study was conducted that suggested an association between talc and ovarian cancer. This study was conducted by Dr. W.J. Henderson and others in Cardiff, Wales.

125.    In or about 1982, the first epidemiologic study was performed on talcum powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk in ovarian cancer with women who reported genital talc use. Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study. Dr. Cramer advised Dr. Semple that Johnson & Johnson should place a warning on its talcum powders about the ovarian cancer risks so that women can make an informed decision about their health.

126.    Since publication of the Cramer study in 1982, there have been approximately twenty-three (23) additional epidemiologic studies providing data regarding the association of talc and ovarian cancer. Nearly all of these studies have reported an elevated risk for ovarian cancer associated with genital talc use in women:

a.      In 1983, a case-control study found a 150% increased risk of ovarian cancer for women who use talcum powder in the genital area. Hartge, P., *et al*. Talc and Ovarian Cancer. *JAMA*. 1983; 250(14):1844.

b.      In 1988, a case control study of 188 women diagnosed with epithelial ovarian cancer and 539 control women found that 52% of the cancer patients habitually used talcum powder on the genital area before their cancer diagnosis. The study showed a 50% increase in risk of ovarian cancer in women that used talcum powder on their genital area and a positive dose-response relationship. Whittemore AS, *et al*. Personal and environmental characteristics related to

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

epithelial ovarian cancer. II. Exposures to talcum powder, tobacco, alcohol, and coffee. *Am. J. Epidemiol*. 1988 Dec; 128(6):1228-40.

c.  A 1989 study looked at 235 women diagnosed with epithelial ovarian cancer and 451 controls, and found a 29% increased risk in ovarian cancer with women who reported genital talcum powder use more than once each week. Booth, M., *et al*. Risk factors for ovarian cancer: a case-control study. *Br J Cancer*. 1989 Oct; 60(4):592-8.

d.  In 1992, a case-control study found a statistically significant 80% increased risk of ovarian cancer in women with more than 10,000 lifetime perineal applications of talc, demonstrating a positive dose-response relationship. Harlow BL, *et al.* Perineal exposure to talc and ovarian cancer risk. *Obstet Gynecol*. 1992 Jul; 80(1):19-26.

e.  Another 1992 case-control study reported a 70% increased risk from genital talc use and a 379% increased risk of ovarian cancer of women who used talc on sanitary napkins in their genital area. Rosenblatt, K.A. *et al.* Mineral fiber exposure and the development of ovarian cancer. *Gynecol Oncol*. 1992 Apr; 45(1):20-5.

f.  Yet another 1992 case-control study by Yong Chen with 112 diagnosed epithelial ovarian cancer cases and 224 age-matched community controls found an elevated risk for ovarian cancer in women who applied talc-containing dusting powder to the lower abdomen and perineum for longer than 3 months. Yong Chen, *et al*., Risk Factors for Epithelial Ovarian Cancer in Beijing, China, 21 *Int. J. Epidemiol*. 23-29 (1992).

g.  In 1995, the largest study of its kind to date found a statistically significant 27% increased risk in ovarian cancer for women who regularly use talc in the abdominal or perineal area. Purdie, D., *et al.* Reproductive and other factors and risk of epithelial ovarian cancer: An Australian case-control study. Survey of Women's Health Study Group. *Int J Cancer*. 1995 Sep 15; 62(6):678-84.

h.  In 1996, a case-control study found a statistically significant 97% increased risk of ovarian cancer in women who used what they described as a "moderate" or higher use of talc-based powders in their genital area. *See* Shushan, A., *et al.* Human menopausal gonadotropin and the risk of epithelial ovarian cancer. *Fertil. Steril.* 1996 Jan; 65(1):13-8.

i.  In 1997, a case control study of 313 women with ovarian cancer and 422 without this disease found that the women with cancer were more likely to have applied talcum powder to their external genitalia area. Women who performed any perineal dusting or used genital deodorant spray respectively had a statistically significant 60% to 90% higher risk of developing ovarian cancer. Cook, LS, *et al.* Perineal powder exposure and the risk of ovarian cancer. *Am. J Epidemiol.* 1997 Mar 1; 145(5):459-65.

j.  In 1997, a case-control study involving over 1,000 women found a statistically significant increased risk of 42% for ovarian cancer for women who applied talc directly or via sanitary napkins to their perineal area. Chang, S, *et al.* Perineal talc exposure and risk of ovarian carcinoma. *Cancer*. 1997 Jun 15; 79(12):2396-401.

k.  In 1998, a case-control study found a 149% increased risk of ovarian cancer in

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

women who used talc-based powders on their perineal area. Godard, B., *et al.* Risk factors for familial and sporadic ovarian cancer among French Canadians: a case-control study. *Am J Obstet Gynecol*. 1998 Aug; 179(2):403-10.

l.    Dr. Daniel Cramer conducted another case-control study in 1999, observing 563 women newly diagnosed with epithelial ovarian cancer and 523 women in a control. The study found a statistically significant 60% increased risk of ovarian cancer in women that used talc-based body powders on their perineal area and an 80% increase in risk for women with over 10,000 lifetime applications. Cramer, DW, *et al.* Genital talc exposure and risk of ovarian cancer. *Int J Cancer*. 1999 May 5; 81(3):351-56.

m.    In 2000, a case-control study including over 2,000 women found a statistically significant 50% increased risk of ovarian cancer from genital talc use in women. Ness, RB, *et al.* Factors related to inflammation of the ovarian epithelium and risk of ovarian cancer. *Epidemiology*. 2000 Mar; 11(2):111-7.

n.    In 2004, a case-control study of nearly 1,400 women from 22 counties in Central California found a statistically significant 37% increased risk of epithelial ovarian cancer from women's genital talc use, and a 77% increased risk of serous invasive ovarian cancer from women's genital talc use. Importantly, this study also examined a women's use of cornstarch powders as an alternative to talc, and found no increased risk in ovarian cancer in women in the cornstarch group, supporting a safe alternative to talc for genital use. Mills, PK, *et al*. Perineal talc exposure and epithelial ovarian cancer risk in the Central Valley of California. *Int J Cancer*. 2004 Nov 10; 112(3):458-64.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

o.     In a 2007 study by Buz'Zard, *et al.*, talc was found to increase proliferation, induced neoplastic transformation and increased reactive oxygen species (ROS) generation time-dependently in the ovarian cells. The study concluded that talc may contribute to ovarian carcinogenesis in humans. The data suggested that talc may contribute to ovarian neoplastic transformation and Pycnogenol reduced the talc induced transformation. *Phytotherapy Research: PTR* 21, no. 6 (June 2007): 579-86.

p.     In 2008, a combined study of over 3,000 women from a New England-based case-control study found a general 36% statistically significant increased risk of epithelial ovarian cancer from genital talc use and a 60% increased risk of the serous invasive ovarian cancer subtype. The study also found a highly significant dose-response relationship between the cumulative talc exposure and incidence of ovarian cancer (and all serous invasive ovarian cancer), adding further support to the causal relationship. Gates, MA, *et al.* Talc Use, Variants of the GSTM1, GSTT1, and NAT2 Genes, and Risk of Epithelial Ovarian Cancer. *Cancer Epidemiol Biomarkers Prev.* 2008 Sep; 17(9):2436-44.

q.     A 2009 case-control study of over 1,200 women found the risk of ovarian cancer increased significantly with increasing frequency and duration of talc use, with an overall statistically significant 53% increased risk of ovarian cancer from genital talc use. That increased risk rose dramatically to 108% in women with the longest duration and most frequent talc use. Wu, AH, *et al.* Markers of inflammation and risk of ovarian cancer in Los Angeles County. *Int. J Cancer.* 2009 Mar 15; 124(6):1409-15.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

r.     In 2011, another case-control study of over 2,000 women found a 27% increased risk of ovarian cancer from genital talc use. Rosenblatt, KA, *et al.* Genital powder exposure and the risk of epithelial ovarian cancer. *Cancer Causes Control*. 2011 May; 22(5):737-42.

s.     In June of 2013, a pooled analysis of over 18,000 women in eight case-control studies found a 20% to 30% increased risk of women developing epithelial ovarian cancer from genital powder use. The study concluded by stating, "Because there are few modifiable risk factors for ovarian cancer, avoidance of genital powders may be a possible strategy to reduce ovarian cancer incidence." Terry, KL, *et al.* Genital powder use and risk of ovarian cancer: a pooled analysis of 8,525 cases and 9,859 controls. *Cancer Prev Res (Phila)*. 2013 Aug; 6(8):811-21.

t.     In May 2015, Roberta Ness performed a meta-analysis of all accumulated epidemiologic evidence (23 case-control studies 5 meta-analyses and 3 analyses or a single cohort). Talc use was found to increase ovarian cancer by 30-60% in almost all well-designed studies. The results were published in the International Journal of Gynecological Cancer. Ness, R. Does Talc exposure cause ovarian cancer? Intl. Jnl Gyn Cancer. 25 Suppl 1 (May 2015): 51.

u.     Also in 2015, Cramer, *et al*. performed a retrospective case-control study. Overall, genital talc use was associated with an OR (95% CI) of 1.33 (1.16, 1.52), with a trend for increasing risk by talc-years. In addition, subtypes of ovarian cancer more likely to be associated with talc included invasive serous and endometrioid tumors and borderline serous and mucinous tumors.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Premenopausal women and postmenopausal HT users with these subtypes who had accumulated greater than 24 talc-years had ORs (95% CI) of 2.33 (1.32, 4.12) and 2.57 (1.51, 4.36), respectively. Epidemiology (Cambridge, Mass.), December 17, 2015.

v.    A 2016 study of African-American women found that body powder was significantly associated with Epithelial Ovarian Cancer. Genital powder was associated with an increased risk of EOC (OR = 1.44; 95% CI, 1.11-1.86) and a dose-response relationship was found for duration of use and number of lifetime applications ($P < 0.05$). The study concluded that body powder is a modifiable risk factor for epithelial ovarian cancer among African-American women. Schildkraut JM, *et al*. Association between Body Powder Use and Ovarian Cancer: the African American Cancer Epidemiology Study (AACES). Cancer epidemiology, biomarkers & prevention: a publication of the American Association for Cancer Research, cosponsored by the American Society of Preventive Oncology. *Cancer Epidemiol Biomarkers Prev*; 25(10); 1411-7.

w.    A 2016 study examined 2,041 cases with epithelial ovarian cancer and 2,100 age-and-residence-matched controls. Genital use of talc was associated with a 1.33 OR with a trend for increasing risk by years of talc use. Most women in the study reported using the PRODUCTS. Among epidemiologic variables, no confounders for the association were identified. Cramer DW, *et al*. The association between talc use and ovarian cancer: a retrospective case-control study in two US states. *Epidemiology*. 2016; 27, 334-46.

127.    In or about 1993, the United States National Toxicology Program published a

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

study on the toxicity of non-asbestos form talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

128.   In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA), now known as Defendant PCPC, reconvened the Talc Interested Party Task Force (TIPTF). The TIPTF was originally formed by the CTFA in the 1980s to defend talc in response to the first epidemiologic studies that found an association between ovarian cancer and genital talc use. Defendants Johnson & Johnson and Luzenac – now known as Defendant Imerys Talc – were primary actors and contributors to the TIPTF.

129.   The purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, and members of the TIPTF, including Defendants Johnson & Johnson and Luzenac, edited their reports before submission of these reports to governmental agencies. Members of the TIPTF knowingly released false information about the safety of talc to the consuming public and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to cancer.

130.   At all pertinent times, PCPC coordinated the defense of talc and acted as a mouthpiece for the members of the TIPTF, including the Defendants Johnson & Johnson and Imerys. PCPC, funded by cosmetic-industry companies, was motivated to defend talc because its members used talc in their products. Upon information and belief, and at all times pertinent,

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

PCPC's revenue has been generated through a dues system based in part on its members' annual sales. As a result, PCPC had a direct pecuniary interest in defending the safety of talc and the PRODUCTS.

131.    Since approximately 1973, the Cosmetic Ingredient Review ("CIR") has reviewed the safety of ingredients used in the cosmetic and personal care products industry. Although Defendants have, at all pertinent times, promoted CIR as an independent organization, CIR is an organization within and wholly funded by the members of PCPC through donations to the PCPC. In fact, CIR shares the same office space with PCPC, and its employees are paid by PCPC.

132.    Over the years, CIR has reviewed hundreds of ingredients used in the cosmetic industry, but has only found 12 ingredients to be "unsafe for use in cosmetics." In contrast, CIR has deemed approximately 1,800 ingredients to be "safe as used."

133.    Even though PCPC knew of the safety concerns surrounding talc for almost three decades, the CIR did not begin to review talc until after the first lawsuit alleging a link between talc use and ovarian cancer was filed. Upon information and belief, during the CIR review process, Defendants influenced the scientists working on the review and ultimately edited the reviews in a biased manner.  Not surprisingly, when CIR published its final report in 2015 it found talc to be safe as used in cosmetics.

134.    Upon information and belief, in or about 1990, the U.S. Food and Drug Administration ("FDA") asked manufacturers to voluntarily stop putting talc on surgical gloves because mounting scientific evidence showed that it caused adhesions in surgical patients, an indication of a foreign body reaction.

135.    On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Johnson & Johnson C.E.O, Ralph Larson, informing his company that studies as far back as 1960's ". . . show[ ] conclusively that the frequent use of talcum powder in the genital area pose[s] a serious health risk of ovarian cancer." The letter cited a study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area. The letter further stated that 14,000 women per year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate. The letter concluded by requesting that Johnson & Johnson withdraw    products containing talc from the market because of the alternative of cornstarch powders, or, at a minimum, place warning information on its talc-based body powders about ovarian cancer and the risk talc poses.  Upon information and belief, Johnson and Johnson refused this request because of the billions of dollars in lost sales that would result from removing talc containing products from the marketplace.

136.    In or about 1996 and at the request of the FDA, the condom industry stopped dusting condoms with talc due to the growing health concerns.

137.    On or about September 17, 1997, Johnson and Johnson's own toxicology consultant, Dr. Alfred Wehner, informed the company about false public statements being made by Defendants regarding talc safety.

138.    In February of 2010, the International Association for the Research of Cancer (IARC), the specialized cancer agency of the World Health Organization, published a paper whereby they classified perineal use of talc based body powder as a "Group 2B" human carcinogen. IARC, which is long known as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk of ovarian cancer in women from perineal use of talc. IARC found that between 16-52% of women in the

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

world were using talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%. IARC concluded with this "Evaluation":  "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder." World Health Organization Int'l Agency for Research on Cancer, *IARC Monographs on the Evaluation of Carcinogenic Risks to Humans*, Vol. 93, Feb. 2010, at 412. By definition "Limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for which a causal interpretation is considered by the Working Group to be credible, but chance, bias or confounding could not be ruled out with reasonable confidence." *Id.* at 31.

139.    In or about 2006, the Canadian government, under The Hazardous Product Act and associated Controlled Product Regulations, classified talc as a "D2A," "very toxic," "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A."

140.    In or about 2006, Imerys Talc began placing a warning on the Material Safety Data Sheet (MSDS) for talc to be used in the PRODUCTS. These MSDSs not only provided the warning information about the IARC classification, but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc.

141.    In 2008, the Cancer Prevention Coalition submitted a second "Petition Seeking a Cancer Warning on Cosmetic Talc PRODUCTS" to the FDA. The first Citizen Petition had been filed on November 17, 1994. The second Petition requested that the FDA immediately require cosmetic talcum powder PRODUCTS to bear labels with a prominent warning that frequent talc application in the female genital area is responsible for major risks of ovarian

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

cancer. The FDA response to the two Citizen Petitions was filed on April 1, 2014.

142.   In 2013, Cancer Prevention Research published a study that showed that women who used talcum powder in their groin area had a 20 to 30 percent greater risk of developing ovarian cancer than women who did not use talc PRODUCTS in that area.

143.   The Gilda Radner Familial Ovarian Cancer Registry, Roswell Park Center Institute, and the Department of Gynecologic Oncology at University of Vermont publish a pamphlet entitled, "Myths & Facts about ovarian cancer: What you need to know." In this pamphlet, under "known" risk factors for ovarian cancer, it lists: "Use of Talc (Baby Powder) in the Genital Area."

144.   Defendants knew of these specific cancer risks and had a duty to warn about the hazards associated with the use of the PRODUCTS.

145.   Defendants failed to inform its customers and end users of the PRODUCTS of a known catastrophic health hazard associated with the use of its products.

146.   In addition, Defendants, to allay any developing public concerns regarding the dangers of talc use that could affect sales and profits, procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public, and used influence over governmental and regulatory bodies regarding talc.

147.   As a direct and proximate result of the Defendants' calculated and reprehensible conduct, Plaintiffs were injured and suffered damages, namely ovarian cancer, which required surgeries and treatments.

## COUNT ONE - STRICT LIABILITY FOR FAILURE TO WARN
### (Against Imerys Talc and Defendants Johnson & Johnson)

148.   Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

149.    At all pertinent times, Imerys Talc mined and sold talc to Defendants Johnson & Johnson with full knowledge that Defendants Johnson & Johnson were then packaging the talc and selling to consumers as the PRODUCTS and that consumers of the PRODUCTS were using it to powder their perineal regions.

150.    At all pertinent times, by mining, refining, screening and testing talc, and supplying that talc to Defendants Johnson & Johnson for use in the PRODUCTS, Imerys Talc was knowingly an integral part of the overall manufacture, design and production of the PRODUCTS, and the PRODUCTS' introduction into the stream of interstate commerce.

151.    At all pertinent times, Imerys Talc knew or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to Defendants Johnson & Johnson, especially when applied to a woman's perineal regions, and it knew or should have known that Defendants Johnson & Johnson were not warning consumers of this danger.

152.    At all pertinent times, Defendants Johnson & Johnson were manufacturing, marketing, testing, promoting, selling and/or distributing the PRODUCTS in the regular course of business.

153.    At all pertinent times,  Imerys Talc and Defendants Johnson & Johnson knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971.

154.    At all pertinent times, including the time of sale and consumption, the PRODUCTS,  when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate and  proper  warnings  and/or   instructions regarding the increased risk of ovarian cancer

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

associated with the use of the  PRODUCTS by women to powder their perineal area. Imerys Talc and Defendants Johnson & Johnson failed to properly  and adequately warn and instruct Plaintiffs as to the risks and benefits of the PRODUCTS given  Plaintiffs' need for this information.

155.    Had Plaintiffs received warning or instruction regarding the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, Plaintiffs would not have used the PRODUCTS at issue.

156.    Due to the absence of any warning or instruction by Imerys Talc and Defendants Johnson & Johnson as to the significant health and safety risks posed by the PRODUCTS as described herein, Plaintiffs were unaware that the PRODUCTS created an increased risk of ovarian cancer, as this danger was not known to the general public.

157.    As a direct and proximate result of Imerys Talc and Defendants Johnson & Johnson failure to warn Plaintiffs of the increased risk of ovarian cancer associated with the PRODUCTS when applied to the perineal area, despite its actual knowledge of this material fact, Plaintiffs suffered damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs and attorneys' fees.

158.    Imerys Talc and Defendants Johnson & Johnson's PRODUCTS were defective because they failed to contain warnings  and/or instructions, and breached express warranties and/or failed to conform to express factual  representations upon which Plaintiffs justifiably relied in electing to use the products. The  defect or defects made the PRODUCTS unreasonably dangerous to those persons, such as Plaintiffs,  who could reasonably be expected to use and rely upon such PRODUCTS. As a result, the defect or  defects were a producing cause of Plaintiffs' injuries and damages.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

159.    Imerys Talc and Defendants Johnson & Johnson's products failed to contain, and continue to this day not to contain,  adequate warnings and/or instructions regarding the increased risk of ovarian cancer with the use  of  the  PRODUCTS  by  women. Imerys Talc and Defendants Johnson & Johnson continue to market, advertise, and expressly represent to the general public that it is safe for women to use the PRODUCTS regardless of application. These Defendants continue with these marketing and advertising campaigns despite having scientific knowledge that dates back to the 1960's that their PRODUCTS increase the risk of  ovarian cancer in women when used in the perineal area.

## COUNT TWO – STRICT LIABILITY – DEFECTIVE MANUFACTURE AND DESIGN
### (Against Imerys Talc and Defendants Johnson & Johnson)

160.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set  forth herein.

161.    At all pertinent times, Imerys Talc was engaged in the business of mining and distributing talc to Defendants Johnson & Johnson for use in the PRODUCTS, and Imerys Talc was  knowingly  an  integral  part  of  the  overall  manufacture,  design,  and  production  of  the PRODUCTS, and their introduction into the stream of interstate commerce.

162.    At  all  pertinent  times,  the  PRODUCTS  were  defectively  and  improperly manufactured and designed by Imerys Talc and Defendants Johnson & Johnson in that, when Imerys Talc supplied its talc product to Defendants Johnson & Johnson with full knowledge that Defendants Johnson & Johnson would use the talc in formulating the PRODUCTS, and that the talc  would  be  the  primary  ingredient  in  the  PRODUCTS,  the  foreseeable  risks  of  the PRODUCTS far outweighed the benefits associated with their design and formulation.

163.    At  all  pertinent  times,  the  PRODUCTS  were  defectively  manufactured  and designed by Imerys Talc in that their design and formulation were more dangerous than an

79

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

164.    At all pertinent times, Defendants Johnson & Johnson were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising and otherwise introducing the PRODUCTS into the stream of interstate commerce, which they sold and distributed throughout the United States.

165.    At all pertinent times, the PRODUCTS created significant risks to the health and safety of consumers that far outweigh the risks posed by other PRODUCTS on the market used for the same therapeutic purpose.

166.    At all pertinent times, a reasonable and safer alternative design existed, which could have feasibly been employed by Defendants Johnson & Johnson to manufacture a product with the same therapeutic purpose as the PRODUCTS. Despite knowledge of this reasonable and safer alternative design, Defendants Johnson & Johnson failed to alter the PRODUCTS' design and formulation. The magnitude of the danger created by the PRODUCTS far outweighs the costs associated with using an alternative, safer design.

167.    As a direct and proximate result of the defective design and manufacture of the PRODUCTS, Plaintiffs suffered damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs and attorneys' fees.

## COUNT THREE - NEGLIGENCE
### (Against Imerys Talc)

162.    Plaintiffs reallege and incorporate by reference every allegation of this Petition as if each were set forth fully and completely herein.

163.    At all pertinent times, Imerys Talc mined, refined, screened, tested and sold talc to Defendants Johnson & Johnson, which it knew that Defendants Johnson & Johnson were

then packaging and selling to consumers as the PRODUCTS, and that consumers of the PRODUCTS were using it to powder their perineal regions.

164.    At all pertinent times, Imerys Talc had a duty to exercise reasonable care to consumers, including Plaintiffs herein, in the design, development, marketing, labeling, manufacturing, formulating, testing, monitoring and/or sale of the PRODUCTS.

165.    At all pertinent times, Imerys Talc knew or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to Defendants Johnson & Johnson, especially when used in a woman's perineal regions, and it knew or should have known that Defendants Johnson & Johnson did not warn its consumers of that danger.

166.    At all pertinent times, Imerys Talc was negligent in supplying talc to Defendants Johnson & Johnson, when it knew or should have known that the talc would be used in the PRODUCTS, without adequately taking steps to ensure that consumers of the PRODUCTS, including Plaintiffs herein, received material information that Imerys Talc possessed on carcinogenic properties of talc, including its risk of causing ovarian cancer.

167.    At all pertinent times, Imerys Talc breached its duty of reasonable care to Plaintiffs in that it negligently designed, developed, marketed, labeled, manufactured, formulated, tested, monitored and/or sold talc to Defendants Johnson & Johnson.

168.    As a direct and proximate result of the Imerys Talc's negligence in one or more of the aforementioned ways, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that caused Plaintiffs to develop ovarian cancer. As a direct and proximate result, Plaintiffs incurred medical bills, lost wages, and conscious pain and suffering, and/or death, and sustained damages, in some cases to include untimely death, funeral and burial costs, as well as the loss of spousal services, companionship, comfort, instruction, guidance, counsel, training and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

support.

## COUNT FOUR – NEGLIGENCE
### (Defendants Johnson & Johnson)

169.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

170.    Defendants Johnson & Johnson were negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the PRODUCTS in one or more of the following respects:

a.    In failing to warn Plaintiffs of the hazards associated with the use of the PRODUCTS;

b.    In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

c.    In failing to properly test their products to determine the increased risk of ovarian cancer during the normal and/or intended use of the PRODUCTS;

d.    In failing to inform ultimate users, such as Plaintiffs as to the safe and proper methods of handling and using the PRODUCTS;

e.    In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

f.    In failing to instruct the ultimate users, such as Plaintiffs, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk of ovarian cancer;

g.    In failing to inform the public in general and the Plaintiffs in particular of the known dangers of using the PRODUCTS for dusting the perineum;

h.    In failing to advise users how to prevent or reduce exposure that caused increased risk for ovarian cancer;

i.    In marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary.

j.    In failing to act like a reasonably prudent company under similar circumstances.

Each and all of these acts and omissions, taken singularly or in combination, were

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

a proximate cause of the injuries and damages sustained by Plaintiffs.

171.    At all pertinent times, Defendants Johnson & Johnson knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

172.    As a direct and proximate result of Defendants Johnson & Johnson's negligence in one or more of the aforementioned ways, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that caused Plaintiffs to develop ovarian cancer. As a direct and proximate result, Plaintiffs incurred medical bills, lost wages, and conscious pain and suffering, and/or death, and sustained damages, in some cases to include untimely death, funeral and burial costs, as well as the loss of spousal services, companionship, comfort, instruction, guidance, counsel, training and support.

### COUNT FIVE – BREACH OF EXPRESS WARRANTIES
### (Against Defendants Johnson & Johnson)

173.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

174.    Defendants Johnson & Johnson, through their advertising and promotional materials, expressly warranted and affirmed that the PRODUCTS were safe for the uses for which they were intended and for uses which were reasonably foreseeable. Defendants Johnson & Johnson's express warranties extended beyond delivery of the PRODUCTS and expressly warranted the future performance of the PRODUCTS. These express warranties include, but are not limited to, the following:

a.    Defendants Johnson & Johnson advertised and labeled the PRODUCTS as safe for application all over the body, including the following:  "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."

    b.    Defendants Johnson & Johnson advertised SHOWER to SHOWER to be applied around or on the perineal area. For example, Defendants Johnson & Johnson advertised that women should use SHOWER to SHOWER to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

175.    Defendants Johnson & Johnson, through the advertisements as listed above, made express warranties to Plaintiffs and the public that the PRODUCTS were safe and effective when applied all over the body, including the female perineal area.

176.    At all pertinent times, Defendants Johnson & Johnson breached said express warranties in that the PRODUCTS were unsafe and ineffective for application all over the body, specifically when used in the female perineal area, because the PRODUCTS, when used in this manner for which Defendants Johnson & Johnson advertised and promoted, significantly increased the risk of developing ovarian cancer among consumers.

177.    At all pertinent times, Defendants Johnson & Johnson had knowledge of the hazards and health risks posed by the PRODUCTS when applied to the perineal area.

178.    At all pertinent times, Defendants Johnson & Johnson willfully failed to disclose the defects and health risks of the PRODUCTS to Plaintiffs.

179.    At all pertinent times, in reliance upon the express warranties made by Defendants Johnson & Johnson as set forth above, Plaintiffs purchased and used the PRODUCTS in their perineal area, believing that the PRODUCTS were safe when used in this

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

manner.

180.    As a direct and proximate result of Defendants Johnson & Johnson's express warranties concerning the PRODUCTS, as described herein, Plaintiffs suffered from the injuries and damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs and attorneys' fees.

## COUNT SIX – BREACH OF IMPLIED WARRANTY
### (Against Defendants Johnson & Johnson)

181.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

182.    At the time Defendants Johnson & Johnson manufactured, marketed, labeled, promoted, distributed and/or sold the PRODUCTS, the Defendants Johnson & Johnson knew of the uses for which the PRODUCTS were intended, including use by women in the perineal area, and impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

183.    Defendants Johnson & Johnson breached their implied warranties of the PRODUCTS sold to Plaintiffs because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

184.    The PRODUCTS were not merchantable or fit for their ordinary purposes, because they had a propensity to lead to the serious personal injuries described herein.

185.    The PRODUCTS were not fit for the particular purpose for which they were warranted without serious risk of personal injury, which risk is much higher than other products designed to perform the same function.

186.    Plaintiffs reasonably relied on Defendants Johnson & Johnson's representations that the PRODUCTS were safe and free of defects.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

187.    Defendants Johnson & Johnson's conduct, as described above, was extreme and outrageous. Defendants Johnson & Johnson risked the lives of the consumers and users of their PRODUCTS, including Plaintiffs, with knowledge of the safety and efficacy problems, and suppressed this knowledge from Plaintiffs. Defendants Johnson & Johnson made conscious decisions not to redesign, relabel, warn or inform Plaintiffs or the unsuspecting consuming public. Defendants Johnson & Johnson's outrageous conduct warrants an award of punitive damages.

188.    As a direct, foreseeable and proximate result of the Defendants Johnson & Johnson's breach of implied  warranties, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that directly and  proximately caused each Plaintiff to develop ovarian cancer and Plaintiffs incurred  medical bills, lost wages, and conscious pain and suffering.

## COUNT SEVEN - FRAUD
### (Against Defendants Johnson & Johnson and PCPC)

189.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

190.    At all pertinent times, Defendants Johnson & Johnson and PCPC intentionally, willfully and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers and users, including Plaintiffs.

191.    At all pertinent times, Defendants Johnson & Johnson and PCPC fraudulently misrepresented and/or concealed material facts concerning the PRODUCTS to consumers, including Plaintiffs, with knowledge of the falsity of their misrepresentations.

192.    At all pertinent times, upon information and belief, the misrepresentations and concealments concerning the PRODUCTS made by Defendants Johnson & Johnson include, but are not limited to the following:

a.  Defendants Johnson & Johnson falsely labeled and advertised the PRODUCTS in the following ways, among others:  "For you, use every day to help feel soft, fresh, and comfortable;" "A sprinkle a day keeps the odor away;" "Your body perspires in more places than just under your arms;" "Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day;" and "SHOWER to SHOWER can be used all over your body."

b.  Defendants Johnson & Johnson falsely advertised SHOWER to SHOWER to be applied "all over," and in particular, urged women to use it to "Soothe Your Skin: Sprinkle on problem areas to soothe skin that has been irritated from friction. Apply after a bikini wax to help reduce irritation and discomfort."

c.  Defendants Johnson & Johnson, through the advertisements described above, knowingly misrepresented to Plaintiffs and the public that the PRODUCTS were safe for use all over the body, including the perineal areas of women.

d.  Defendants Johnson & Johnson intentionally failed to disclose that talc and the associated PRODUCTS, when used in the perineal area, increase the risk of ovarian cancer.

e.  Defendants Johnson & Johnson intentionally failed to include adequate warnings with the PRODUCTS regarding the potential and actual risks of using the Products in the perineal area on women and the nature, scope, severity and duration of any serious injuries resulting therefrom.[2]

f.  Despite knowing about the carcinogenic nature of talc and its likelihood to increase the risk of ovarian cancer in women, Defendants Johnson & Johnson

---

[2] Household Products Database, Label for Johnson's Baby Powder, Original, http://householdproducts.nlm.nih.gov/cgi-bin/household/brands?tbl=brands&id=10001040

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

falsely marketed, advertised, labeled and sold the PRODUCTS as safe for public consumption and usage, including for use by women to powder their perineal areas.

193.    At all pertinent times, upon information and belief, PCPC's conduct giving rise to fraud includes, but is not limited, to the following:

    a.    PCPC formed the TIPTF, with the understood purpose to pool financial resources in an effort to prevent regulation of talc, including the PRODUCTS.

    b.    PCPC, through the TIPTF, hired and funded scientists to perform research regarding the safety of talc. The TIPTF then edited the scientific reports in an effort to skew the data so that it demonstrated safety of talc and talc products and suppressed data demonstrating the dangers of talc. The TIPTF then released and disseminated this biased and intentionally misleading data to governmental agencies.

    c.    PCPC, through the TIPTF, knowingly released false information about the safety of talc products to the consuming public with the intent to induce consumers, including Plaintiffs, to purchase talc products.

    d.    PCPC extensively lobbied and used political and economic influence on governmental bodies in order to prevent regulation of talc products, including the PRODUCTS. These efforts were based knowingly on false and misleading information about the safety of talc.

    e.    PCPC caused to be released, published and disseminated, medical and scientific data, literature and reports containing information and statements regarding the risks of ovarian cancer which PCPC knew were incorrect, incomplete and

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

misleading.

194.    At all pertinent times, Defendants Johnson & Johnson and PCPC actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiffs, and with the intent that consumers would purchase and use the PRODUCTS in the female perineal area.

195.    At all pertinent times, the consuming public, including Plaintiffs, would not otherwise have purchased the PRODUCTS and/or applied the PRODUCTS in the perineal area if they had been informed of the risks associated with the use of the PRODUCTS in the perineal area.

196.    At all pertinent times, Plaintiffs relied on Defendants Johnson & Johnson's and PCPC's misrepresentations concerning the safety of the PRODUCTS when purchasing the PRODUCTS and using the PRODUCTS and that reliance was reasonable and justified.

197.    PCPC engaged in, coordinated or facilitated conduct with no legitimate purpose, and used various improper means to achieve unlawful ends, such that its conduct constituted a sham and therefore takes PCPC outside the purview of Noerr-Pennington immunity or similar immunities.

198.    As a direct and proximate result of Defendants Johnson & Johnson and PCPC's fraudulent concealment, the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer; Plaintiffs were caused to incur medical bills, lost wages, and conscious pain and suffering.

## COUNT EIGHT- NEGLIGENCE
### (Against PCPC)

199.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if  fully set forth herein.

200.    At all pertinent times, PCPC was a national trade association representing the personal care and cosmetics industry of which Defendants Johnson & Johnson and Imerys Talc were active members.

201.    At all pertinent times, PCPC had actual knowledge of the significant risk of ovarian cancer caused by application of the PRODUCTS to the female perineal area.

202.    At all pertinent times, PCPC voluntarily undertook a duty of care of Plaintiffs by promulgating standards, norms and/or bylaws that govern, control and/or inform the manufacturing, design, labeling, marketing, distribution and/or branding practices of its member companies, including but not limited to Defendants Johnson & Johnson and Imerys Talc.

203.    At all pertinent times, PCPC had the means and authority to control the safety standards of Defendants Johnson & Johnson and Imerys Talc in the manufacturing, design, labeling, marketing, distribution and/or branding the PRODUCTS.

204.    PCPC breached its duty of care to Plaintiffs and the consuming public by negligently failing to ensure that its influential members Defendants Johnson & Johnson and Imerys Talc complied and adhered to the PCPC standards, norms and bylaws concerning the safe manufacture, design, labeling, marketing, distribution and/or branding of the PRODUCTS, and subsequently allowing the PRODUCTS to be introduced into the stream of interstate commerce despite their significant health and safety risks of which PCPC had full knowledge.

205.    PCPC engaged in activities for the unlawful purpose of promoting its private and commercial interests and the interests of its member companies. PCPC's coordinated efforts facilitated conduct which had no legitimate purpose. PCPC's conduct constituted a sham and therefore takes PCPC outside the purview of Noerr-Pennington immunity or similar

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

immunities.

206.    As a direct and proximate result of PCPC's negligence, Defendants Johnson & Johnson and Imerys Talc manufactured, designed, labeled, marketed, distributed and branded the PRODUCTS in a way that foreseeably caused a significant risk of ovarian cancer when the PRODUCTS were applied to the female perineal area.

207.    As a further direct and proximate result of PCPC's negligence, Plaintiffs suffered damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs and attorneys' fees.

### COUNT NINE - CONCERT OF ACTION
### (Defendant PCPC)

208.    Plaintiffs incorporate by reference each of the preceding paragraphs of this Petition as  if set forth at length herein.

209.    Upon information and belief, PCPC knowingly and willfully aided and abetted  the  fraudulent marketing and sales described herein.

210.    Defendant PCPC aided and abetted this fraudulent scheme by providing substantial assistance to Imerys Talc and Defendants Johnson & Johnson. This substantial assistance included,  among other things, conduct outlined in the "Facts" section of this pleading.

211.    Without Defendant PCPC's substantial assistance, involvement and participation;  the fraudulent scheme would not have been possible.

212.    Plaintiffs suffered serious injury and pecuniary losses as a proximate result of  the aiding and abetting of PCPC, including but not limited to the loss of the Plaintiffs' life.

### COUNT TEN – NEGLIGENT MISREPRESENTATION
### (All Defendants)

213.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

set  forth herein.

214.    Defendants had a duty to accurately and truthfully represent to the medical and  healthcare community, Plaintiffs and the public, that the PRODUCTS had been tested and found  to be safe and effective for use in the perineal area. The representations made by Defendants, in  fact, were false.

215.    Defendants failed to exercise ordinary care in the representations concerning the  PRODUCTS while they were involved in their manufacture, sale, testing, quality assurance,  quality control, and distribution in interstate commerce, because Defendants negligently  misrepresented the PRODUCTS' high risk of unreasonable, dangerous, adverse side effects.

216.    Defendants breached their duty in representing that the PRODUCTS have no  serious side effects.

217.    As a foreseeable, direct and proximate result of the negligent misrepresentation of  Defendants as set forth herein, Defendants knew, and had reason to know, that the PRODUCTS  had been insufficiently tested, or had not been tested at all, and that they lacked adequate and  accurate warnings, and that it created a high risk, and/or higher than acceptable risk, and/or higher  than reported and represented risk, of adverse side effects.

218.    As a proximate result of Defendants' conduct, Plaintiffs have been injured and  sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life,  loss of care and comfort, and economic damages.

### COUNT ELEVEN – CIVIL CONSPIRACY
### (Against All Defendants)

219.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth fully and completely herein.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

220.    At all pertinent times, the Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, acted in concert, aided and abetted and/or conspired to cause Plaintiffs' injuries by exposing Plaintiffs to the PRODUCTS, which are harmful and dangerous.

221.    Further, at all pertinent times, the Defendants knowingly agreed, contrived, confederated, acted in concert, aided and abetted and/or conspired to defraud Plaintiffs and consumers of the PRODUCTS regarding the true nature of the PRODUCTS and their potential to cause ovarian cancer when used in a reasonably foreseeable manner.

222.    At all pertinent times, Defendants knowingly agreed, contrived, confederated, acted in concert, aided and abetted and/or conspired to defraud Plaintiffs and consumers of the PRODUCTS with the purpose of maintaining the popularity and reputation of the PRODUCTS and, therefore, maintaining high sales of the PRODUCTS, at the expense of consumer safety.

223.    At all pertinent times, pursuant to and in furtherance of said conspiracies, Defendants performed the following overt and unlawful acts:

a.  For many decades, upon information and belief, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which indicate that, when applied to the perineal area, an ordinary and foreseeable use by women, the PRODUCTS are unreasonably dangerous, hazardous, deleterious to human health, carcinogenic and potentially deadly;

b.  Upon information and belief, despite the medical and scientific data, literature and test reports possessed by and available to the Defendants, Defendants individually, jointly and in conspiracy with each other, fraudulently, willfully

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

and maliciously:

    i.  Withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from consumers, including Plaintiffs;

    ii.  Through the TIPTF, Defendants instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants, through the TIPTF, used their influence over the NTP Subcommittee, and the threat of litigation against the NTP, to prevent the NTP from classifying talc as a carcinogen on its 10th RoC; and

    iii.  Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer, which Defendants knew were incorrect, incomplete and misleading.

c.  Upon information and belief, by these false and fraudulent representations, omissions and concealments, Defendants intended to induce consumers, including Plaintiffs, to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose themselves to the dangers inherent in the use of the PRODUCTS.

224.   Plaintiffs reasonably and in good faith relied upon the aforementioned fraudulent representations, omissions and concealments made by Defendants regarding the nature of the PRODUCTS.

225.   PCPC engaged in, coordinated or facilitated conduct with no legitimate purpose, and used various improper means to achieve unlawful ends, such that its conduct constituted a sham and therefore takes PCPC outside the purview of Noerr-Pennington

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

immunity or similar immunities.

226.     As a direct, foreseeable and proximate result of Defendants' breaches of implied warranties, Plaintiffs purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused each Plaintiff to develop ovarian cancer, and Plaintiffs were caused to incur  medical bills, lost wages, and conscious pain and suffering.

## COUNT TWELVE - PUNITIVE DAMAGES
### (Against All Defendants)

227.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

228.     Defendants sold the PRODUCTS to Plaintiffs and other consumers throughout the United States without doing adequate testing to ensure that the PRODUCTS were reasonably safe for their intended use.

229.     Defendants sold the PRODUCTS to Plaintiffs and other consumers throughout the United States in spite of their knowledge that the PRODUCTS cause the problems heretofore set forth in this Petition, thereby causing the severe and debilitating injuries suffered by Plaintiffs.

230.     At all pertinent times hereto, Defendants knew or should have known that the PRODUCTS were inherently dangerous with respect to the risk of ovarian cancer, loss of life's enjoyment, an effort to cure the conditions proximately related to the use of the PRODUCTS, as well as other severe and personal injuries which are permanent and lasting in nature.

231.     At all pertinent times hereto, Defendants attempted to misrepresent and did misrepresent facts concerning the safety of the PRODUCTS, including but not limited to information regarding the increased risk of developing ovarian cancer when the PRODUCTS are used in the perineal area.

232.     Defendants' misrepresentations included knowingly withholding material

information from the consumers, including Plaintiffs, concerning the safety and efficacy of the PRODUCTS.

233.    At all pertinent times hereto, Defendants knew and intentionally and/or recklessly disregarded the fact that the PRODUCTS cause debilitating and potentially lethal side effects with greater frequency than safer alternative PRODUCTS.

234.    At all pertinent times hereto, Defendants knew and intentionally and/or recklessly disregarded the fact that the PRODUCTS cause debilitating and potentially lethal side effects with greater frequency than safer alternative PRODUCTS and recklessly failed to advise the public of the same.

235.    At all pertinent times hereto, Defendants intentionally misstated and misrepresented data, and continue to misrepresent data, so as to minimize the true and accurate risk of injuries and complications caused by the PRODUCTS.

236.    Notwithstanding the foregoing, Defendants continue to aggressively market the PRODUCTS to consumers, without disclosing the true risk of side effects.

237.    Defendants knew that the PRODUCTS were defective and of an unreasonably dangerous nature, but continued to manufacture, produce, assemble, market, distribute and sell the PRODUCTS so as to maximize sales and profits at the expense of the health and safety of the Public, including Plaintiffs, in conscious and/or reckless disregard of the foreseeable harm caused by the PRODUCTS.

238.    Defendants continue to intentionally conceal and/or recklessly and/or grossly negligently fail to disclose to the public, including Plaintiffs, the serious side effects of the PRODUCTS in order to ensure continued and increased sales.

239.    Defendants' intentional, reckless and/or grossly negligent failure to disclose

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

information deprived Plaintiffs of necessary information to enable them to weigh the true risks of using the PRODUCTS against their benefits.

240.    Defendants have engaged in conduct entitling Plaintiffs to an award of punitive damages pursuant to Common Law principles and the statutory provisions of Missouri law.

241.    Defendants' conduct as described herein shows willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

## COUNT THIRTEEN – DAMAGES
### (Against All Defendants)

242.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

243.    Defendants knew of the dangerous condition of the PRODUCTS, including that they posed a danger to their consumers, including Plaintiffs, but chose not to include any warnings or information regarding the dangerous condition of the PRODUCTS.

244.    Defendants showed complete indifference to or conscious disregard of the safety of Plaintiffs by their conduct described herein. Defendants knew or should have known failure to include a warning for the PRODUCTS would result in women using the PRODUCTS in their perineal areas and subsequently developing ovarian cancer.

245.    Plaintiffs are entitled to exemplary damages to punish Defendants and to deter Defendants and other in similar situations from like conduct.

## COUNT FOURTEEN – WRONGFUL DEATH
### (Against All Defendants)

246.    Plaintiffs incorporate by reference every other paragraph of this Petition as if each were set forth fully and completely herein.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

247.    As a direct and proximate result of the acts and/or omissions of Defendants as set forth herein the Decedents named in this action used the PRODUCTS in their perineal areas. Subsequent to such use, Decedents developed ovarian cancer, suffered substantial pain and suffering, both physical and emotional in nature, and died.

248.    Plaintiffs, on behalf of themselves and all of the next of kin of Decedents, are entitled to recover damages as Decedents would have if they were living, as a result of actions and/or omissions of Defendants.

249.    Plaintiffs, on behalf of themselves and all of Decedents' next of kin are also entitled to recover punitive damages and damages for substantial pain and suffering caused to Decedents from the acts and/or omissions of Defendants as fully set forth herein, including without limitations, punitive damages.

250.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Decedents have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages.

## **TOLLING OF STATUTE OF LIMITATIONS**

251.    Plaintiffs reallege each and every allegation of this Petition as if each were set forth fully herein

252.    Plaintiffs suffer and have suffered from an illness that has a latency period and does not arise until  many years after exposure. Plaintiffs' cancer did not distinctly manifest itself until they were made  aware that it could be caused by their use of Defendants' products. Consequently, the discovery rule applies to this case and the statute of limitations has been tolled  until the day that Plaintiffs knew or had reason to know that their ovarian cancer was linked to their  use of the PRODUCTS.

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

253.    Furthermore, the running of any statute of limitations has been equitably tolled by reason of Defendants' fraudulent concealment and conduct. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiffs the true risks associated with the PRODUCTS.

254.    As a result of Defendants' actions, Plaintiffs and Plaintiffs' prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

255.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of PRODUCTS. Defendants were under a duty to disclose the true character, quality and nature of PRODUCTS because this was non-public information which Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to Plaintiffs, their medical providers and/or their health facilities.

256.    Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable product, notwithstanding the known or reasonably known risks. Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on Defendants' representations

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants on each of the above-referenced claims and causes of action, and as follows:

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

a.  Awarding compensatory damages in excess of $25,000, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, death and other non-economic damages in an amount to be determined at trial of this action;

b.  Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings, funeral expenses, and other economic damages in an amount to be determined at trial of this action;

c.  Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

d.  Pre-judgment interest;

e.  Post-judgment interest;

f.  Awarding Plaintiffs reasonable attorneys' fees;

g.  Awarding Plaintiffs the costs of these proceedings; and

h.  Such other and further relief as this Court deems just and proper.

Dated:  February 23, 2017

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Respectfully submitted,

By: __/s/ Thomas J. Lech_____
Thomas J. Lech (MSB #50833)
Katie A. Hubbard (MSB #6303558)
Ann E. Callis (*pro hac vice application to be filed*)
**GOLDENBERG HELLER & ANTOGNOLI, P.C.**
2227 S. State Route 157
P.O. Box 959
Edwardsville, IL   62025
T: (618) 656-5150
F: (618) 656-6230
E: tlech@ghalaw.com
   khubbard@ghalaw.com
   acallis@ghalaw.com

Katherine B. Riley (MSB #99109)
*pro hac vice application to be filed*
Sterling Starns (MSB #104277)
*pro hac vice application to be filed*
Brandi Hamilton (MSB #105116)
*pro hac vice application to be filed*
**DON BARRETT, P.A.**
404 Court Square North
P.O. Box 927
Lexington, MS 39095
T: (662) 834-2488
F: (662) 834-2628
E: kbriley@barrettlawgroup.com
   sstarns@barrettlawgroup.com
   bhamilton@barrettlawgroup.com

Korey A. Nelson (LA #30002)
*pro hac vice application to be filed*
Amanda K. Klevorn (LA #35193)
*pro hac vice application to be filed*
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
T: (504) 799-2845
F: (504) 881-1765
E: aklevorn@burnscharest.com
   knelson@burnscharest.com

Electronically Filed - City of St. Louis - February 23, 2017 - 02:57 PM

Warren T. Burns (TX #24053119)
*pro hac vice application to be filed*
Daniel H. Charest (TX #24057803)
*pro hac vice application to be filed*
Spencer M. Cox (TX #24097540)
*pro hac vice application to be filed*
**BURNS CHAREST LLP**
500 North Akard Street, Suite 2810
Dallas, Texas 75201
T: (469) 904-4551
F: (469) 444-5002
E: wburns@burnscharest.com
   dcharest@burnscharest.com
   scox@burnscharest.com

*Attorneys for Plaintiffs*

Electronically Filed - City of St. Louis - February 24, 2017 - 03:38 PM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

BRENDA J. ANDERSON, et al.

Plaintiffs,

v.                                          Case No. 1722-CC00572

JOHNSON & JOHNSON; JOHNSON &
JOHNSON CONSUMER COMPANIES,
INC.; IMERYS TALC AMERICA, INC.
f/k/a LUZENAC AMERICA, INC. f/k/a
RIO TINTO MINERALS, INC.; and
PERSONAL CARE PRODUCTS COUNCIL,

Defendants.

## SERVICE MEMO

Summons to be prepared for Defendants, as follows:

Johnson & Johnson
c/o Registered Agent
One Johnson & Johnson Plaza
New Brunswick, NJ  08933

Johnson & Johnson Consumer Companies, Inc.
c/o Registered Agent
One Johnson & Johnson Plaza
New Brunswick, NJ   08933

Imerys Talc America, Inc.
f/k/a Luzenac Americas, Inc.
f/k/a Rio Tinto Minerals, Inc.
c/o CSC-Lawyers Incorporating Service
221 Bolivar
Jefferson City, MO   65101

Personal Care Products Council
c/o Thomas Meyers, Registered Agent
1620 L Street, N.W., Suite 1200
Washington, DC  20036

Electronically Filed - City of St. Louis - February 24, 2017 - 03:38 PM

Respectfully submitted,

By: __/s/ Thomas J. Lech_____
Thomas J. Lech (MSB #50833)
Katie A. Hubbard (MSB #6303558)
Ann E. Callis (*pro hac vice application to be filed*)
**GOLDENBERG HELLER & ANTOGNOLI, P.C.**
2227 S. State Route 157
P.O. Box 959
Edwardsville, IL   62025
T: (618) 656-5150
F: (618) 656-6230
E: tlech@ghalaw.com
   khubbard@ghalaw.com
   acallis@ghalaw.com

Katherine B. Riley (MSB #99109)
*pro hac vice application to be filed*
Sterling Starns (MSB #104277)
*pro hac vice application to be filed*
Brandi Hamilton (MSB #105116)
*pro hac vice application to be filed*
**DON BARRETT, P.A.**
404 Court Square North
P.O. Box 927
Lexington, MS 39095
T: (662) 834-2488
F: (662) 834-2628
E: kbriley@barrettlawgroup.com
   sstarns@barrettlawgroup.com
   bhamilton@barrettlawgroup.com

Korey A. Nelson (LA #30002)
*pro hac vice application to be filed*
Amanda K. Klevorn (LA #35193)
*pro hac vice application to be filed*
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
T: (504) 799-2845
F: (504) 881-1765
E: aklevorn@burnscharest.com
   knelson@burnscharest.com

Electronically Filed - City of St. Louis - February 24, 2017 - 03:38 PM

Warren T. Burns (TX #24053119)
*pro hac vice application to be filed*
Daniel H. Charest (TX #24057803)
*pro hac vice application to be filed*
Spencer M. Cox (TX #24097540)
*pro hac vice application to be filed*
**BURNS CHAREST LLP**
500 North Akard Street, Suite 2810
Dallas, Texas 75201
T: (469) 904-4551
F: (469) 444-5002
E: wburns@burnscharest.com
   dcharest@burnscharest.com
   scox@burnscharest.com

*Attorneys for Plaintiffs*